Iredell, Judge,
delivered the resolution of the court as follows:
It is extremely clear, that it was not necessary, at common law, that the prosecutor’s name should be written at the foot of the indictment; and, although the act of assembly requires it to be done, where the prosecution is at the instance of an individual, for the sake of rendering him liable for costs if he fails, that does not prevent the attorney fo the public from preferring an indictment ex officio; ol*fhk grand jury from finding one of their own accord. ForT besides the authority which the attorney had at cmfhnj.c^ijp law, which is not taken away by the state statute, th/act of congress makes it his duty, if he sees cause, to pro*t^tíJí b ex officio, “all delinquents for crimes and offences, cB|«fc zable, under the authority of the United States.” Act September 1789, cap. 20, § 35 : And it is incident to the nature and constitution of the grand jury, to indict when they receive information of a crime. The latter was said to be a presentment merely, and not an indictment; but that is not strictly correct: For the difference between them is this, If the grand jury present of their own knowledge, it is a presentment only; but, if on the knowledge of others, it is an indictment. Independent of that, however, the object *248 of the act of assembly was merely to provide for costs: But, upon that subject, congress have acted themselves, and directed that the informer, if the prosecution fails, shall pay the costs, without prescribing that his name shall be written at the foot of the indictment. Act May 1792, cap. 36, § 5. And, as the state statutes can be referred to only where the laws of the United States have not taken up the subject, nor made any provision concerning it, we think, that the indictment ought not to be quashed: And, upon similar principles, we áre equally clear, as to the other point; for the act of assembly is a general provision, applying to all cases, and leaves the fine indefinite, except that it is to be according to the degree of the fault, and the estate of the defendant; but the act of congress provides for the very case itself, and declares that the defendant shall, on conviction, “ be imprisoned not exceeding twelve months, and fined not exceeding three hundred dollars.” Act Cong. April 1790, cap. 9, § 22. So that congress have not only taken up the subject, but have prescribed limits to the punishment, not to be found in the act of assembly: which consequently does not apply to the case. The common law practice, therefore, must be adhered to; that is to say, the jury are to find, whether the prisoner be guilty; and if, unfortunately, that should prove to be the case, the court must assess the fine. We should gladly have left this unpleasant service to the jury; but we are not at liberty to do so; for we are not to supply supposed omissions of congress, upon the ground that they have not gone far enough; or to confer authority, where they have not thought proper to confide it. We must administer the law as we find it; and, under that point of view, we should not be justified in relinquishing a jurisdiction vested in. the court, and which it will be our painful duty to exercise.
Wichham insisted, on the trial, that there was no resistance ; for the deputy marshal had actually served the writ without obstruction; and the resistance was against be *249 ing committed for refusing to give bail: which the deputy marshal was not authorized to demand, on the writ for the penalty; but would have been guilty of false imprisonment, if he had committed the defendant upon it; because he refused to give the bail. In support of which, he said that, both by the common law and the state statutes, the defendant was not liable to be held to bail, in an action for a penalty, given by a statute. Acts Ass. 1788, cap. 67, § 27. And, as the laws of the United States had made no provision upon the subject, the state laws must prevail.
Campbell, contra. By the state practice, the capias is tbe first process, and commands the sheriff to take the body, and have it forthcoming: which he must do at his peril, unless in cases of special exception, by some statute; and there is none such here. Consequently, as the act of congress directs that writs, in the courts of the United States, shall be like those of the states in similar cases, (Acts Congr. Septr. 1789, cap. 21, § 2,) the defendant might have been lawfully held to bail. But some regard ought to be had to the situation of the officer; for the rule insisted on, by the defendant’s counsel, would involve him in inextricable difficulties.
Wickham. At common law, the defendant was not liable to be held to bail in actions of this kind. The original process in actions of debt was a pracipe quod reddat; which, if the defendant failed to obey, the capias went in consequence of the disobedience; but that proving tedious, the capias, at length, went in the first instance, upon a feigned disobedience of the original. That presumption, however, was not made to the prejudice of the defendant; for bail was dispensed with upon the capias. 3 Black. Com. 287.
The writs were marked as follows: Upon that for the penalty, the endorsement is, “ For a penalty under the act of congress of the United States. Appearance bail required, Alexander Campbell, attorney for the United States *250 and, upon that for the duty on the still, the endorsement is in these words : “ For duties on a still unpaid. Appearance bail required, Alexander Campbell, attorney for the United States.” The jury found the defendant guilty; but the verdict was to be subject to the opinion of the court, Whether the deputy marshal was authorized to demand bail ?
Campbell. When the sheriff arrests the defendant, he must either take bail, or commit the prisoner; or an action lies for the escape. 1 Bac. Ab. 205. At common law nothing but imprisonment would suffice, 2 Roll. Ab. 112 ; and notwithstanding the statute 23 Hen. 6, cap. 9, authorized the sheriff to take bail, yet the plaintiff was not bound to accept the bond; but might require the body to be produced upon the return day of the writ, 1 Venir. 55, 85. 1 Bac. Ab. 205. 1 Salk. 99. Stat. 4 Ann. cap. 16, § 20, although the court would, upon motion, permit the defendant to give common bail, Boh. Inst. Leg. 48. 1 Bac. Ab. 209. 1 Salk. 100. Th. Raym. 74. 1 Ld. Raym. 767. The inflexibility of the' rule will appear by a short review of the statutes of bail. By that of the 23 Hen. 6, cap. 9, the sheriff was authorized to take reasonable sureties; but, if they were not given, he was bound to commit. By that of the 13 Car. 2, cap. 2, § 2, the cause of action was to be inserted in the process; but still bail was to be demanded : and, by that of the 12 Geo. I. cap. 29, the sum is to be endorsed upon the writ; but, if bail be not given, the-sheriff must imprison. 3 Black. Com. 287, 288, 290. So that notwithstanding, the capias, in practice, has, long ago, become the first process, 3 Black. Com. 282, the rule of the common law continues in force; and therefore the defendant must, in every case, give bail, or go to prison.
Wickham. There is no difference between us, where the capias was either the first, or the second, process at common law; for, in both, the body could always be required; and the authorities cited by the attorney prove nothing more. *251 But where the capias was not originally the first, or second, process, but became first by fiction of law, there a different practice obtained, unless the debt was verified, and the defendant was personally bound to pay it. Now a capias in debt, could not issue, in the first instance, at common law; for, before the statute 25 Edw. 3, the original process in that action was a praecipe quod redd,at; and, if that was disobeyed, a capias, grounded on the statute, followed, Fitz. Nat. Br. 263. 3 Black. Com. 280,287. 3 Co. 11. 5 Co. 89: upon which the body might be required, as the contempt of the summons shewed, that a voluntary appearance was not to be expected. But when the praecipe fell into disuse, and the capias became the first process, under colour of an imaginary summons and contempt, the law, according to the rule in Liford’s case, 11 Co. 51, that, infictione juris semper aequitas existit, would not subject the defendant to inconvenience, upon the pretence of disobedience to a writ which had never issued j and therefore unless there was a breach of the peace, or the debt was due from the defendant himself, and verified either by a specialty, some sentence of the law, or an affidavit, the defendant was not liable to be committed, or bound to find sureties for his appearance, 3 Black. Com. 287; which is the reason why executors, heirs at law, and femes covert, cannot be held to bail. It is not true, therefore, that the sheriff must, in all eases, obey the writ according to its literal expression; for although cepi corpus is the proper return, he may add that John Doe and Richard Roe are the bail for appearance: and if he had done so in the case in 1 Fentr. 85; or had pleaded, that the writ was a capias in the first instance, and that John Doe and Richard Roe were appearance bail, and got leave to amend his return accordingly, he would have been justified. Consequently, as there was neither a breach of the peace, a specialty, or an affidavit, in the present case, the defendant was not bound to give bail, or go to prison. But whatever may be the rule in England, the question is completely settled here by the act of assembly of 1788, cap. *252 67; which says, that “ in all actions to recover the penalty for breach of any penal law not particularly directing special bail to he given,” the sheriff shall “ be restrained from committing the defendant to prison, or detaining him in his custody, for want of appearance bail; but shall return the writ executed, and if the defendant shall fail to appear thereto, there shall be the like proceeding against him only, as is directed against defendants and their appearance bail, where such is taken.” This i$ decisive, as the act was made before the act of congress, adopting the state laws, passed; and therefore is embraced by it as effectually as if the very words were inserted in the congressional statute.
Campbell, in reply. The act of assembly has nothing to do with the case : for the penal laws of a country are local to that country; and therefore those of Virginia, being local to Virginia, cannot bind the United States. Nor was it intended, by congress, that they should; for uniformity of proceeding in all such cases was, and should be, the object. The man of Massachusetts should not, in this respect, be in one condition; and him of Virginia, in another.

Cur. adv. mIt.

On the 9th of December, 1795, Iredell, Judge, delivered the resolution of the court.
After stating the case, he proceeded as follows:
The question is, Whether, upon the two capias’s found by the special verdict, bail was requirable by the marshal ?
I say upon the two, because, if requirable upon the one, and not upon the other, the marshal ought to have made a distinction, and not demanded bail generally.
It was for this reason the question was reserved as to both, and not as to either singly.
The only one upon which the doubt arises is as to the capias in debt for two hundred dollars, endorsed as follows, “ for a penalty incurred under an act of the congress of the United States. Appearance bail required.” Signed by the attorney for the United States for the district of Virginia.
*253 The single question then is, “ Whether in an action of , , , . - , ,, ’ , O , • r debt, at the instance oi the United States.in this court, lor a penalty under an act of congress, the marshal has a right to require bail of the party ?”
As the endorsement does not specify under what particular act of congress the penalty was recoverable, some doubt might have arisen in case there had been a distinction in any of the acts of congress, the demand of bail being warranted upon actions for some kinds of penalties, but not upon actions for others. But, as I believe there is no such distinction, nor any penalty of a nature similar to any of the exceptions in the state law, this circumstance may be laid out of the case.
If bail is requirable, it must be in virtue of some law of the United States; the whole of this subject, as is admitted, and is clear, depending, so far as the United States are concerned, on the authority of their own legislature.
The congress have made some express provisions in regard to bail in criminal cases. They have made none that I can discover in civil cases. It is scarcely necessary to stop here to observe, that the proceeding in question was not a proceeding in a criminal case, within the meaning of the provisions of congress, but was, in truth, a civil suit; though for an act of disobedience for which a criminal prosecution might possibly have been commenced, if the act of congress does not expressly, or impliedly, exclude it; a point not now material to consider, because the civil suit has, in this instance, been in fact adopted. A criminal proceeding, unquestionably, can only be by indictment, or information. The proceeding in question was neither.
There being, therefore, no express provision of any act of congress on this subject, it is our duty to see, if there be an implied one.
The provisions by congress material to be considered for this purpose, are the following:
In the act, entitled, “ an act to establish the judicial courts of the United States,” (passed the first session of the first congress,) there is a provision to this effect.
*254 (Sect. 34.) “ That the laws of the several states, except where the constitution, treaties or statutes of the United States shall otherwise require, or provide, shall be regarded as rules of decision, in trials at common law in the courts of the United States, in cases where they apply.”
The act of the first session of the second congress, entitled, “ an act for regulating processes in the courts of the United States, &c.,” provides,
(Sect. 2.) “ That the forms of writs, executions and other process, except their style, and the form and modes of proceeding in suits in those of common law, shall be the same as are now used in the said courts respectively, in pursuance of the act, entitled, ‘ an act to regulate processes in the courts of the Únited States,’ in those of equity and in those of admiralty and maritime jurisdiction, according to the principles, rules and usages which belong to courts of equity and ■ to courts of admiralty respectively, as contradistinguished from courts of common law; except so far as may have been provided for by the act to establish the judicial courts of the United States, subject, however, to such alterations as the supreme court of the United States shall think proper, from time to time, by rule, to prescribe to any circuit, or district court, concerning the same.”
In the act first mentioned, (sect. 17,) there is a power given to all the courts of the United States, “ to make and establish all necessary rules for the orderly conducting business in the said courts, provided such rules are not repugnant to the laws of the United States.”
In an act also of the second session of the second congress (chap. 66), entitled “ an act, in addition to the act, entitled, ‘ an act to establish the judicial courts of the United States,’ ” there is the following provision :
“ That it shall.be lawful for the several courts, from time to time, as occasion may require, to make rules and orders for their respective courts directing the returning of writs and processes, the filing of declarations and other pleadings, the taking of rules, the entering and making up judgments *255 by default, and other matters in the vacation and otherwise, in a manner not repugnant to the laws of the United States, to regulate the practice of the said courts respectively, as shall be fit and necessary for the advancement of justice, and especially to that end to prevent delays in proceedings.”
Two different constructions have been contended for by the counsel on both sides.
One that, in this case, the law of Virginia alone is to be the rule by which we are to decide, whether bail was demandable, or not.
The other, that some more general law must be the rule, it not being supposable that, in a case of this kind, congress meant to refer to any local laws of the particular states, which might be inapplicable, in all their circumstances, to the cases of the United States; which, it was contended, was the case expressly in this instance, the act containing exceptions in no wise applicable to the condition of the United States. It has therefore been insisted upon, that, in this instance, we must be governed by the general laws of England, which were the original ground-work of our own, detached from the local laws of Virginia, in particular.
Upon the suggestion of these two constructions, the following preliminary observations occur:
1. That in the formation of laws for a new government, so peculiarly circumstanced as that of the United States, wherein each state bad a separate government of its own for all internal purposes, with a system of laws originally, in substance, the same, but varying in a number of particulars, as the different habits and views of thinking of so many unconnected communities, would naturally occasion, it would have been very unwise, if at all practicable, to have suddenly changed their methods of proceeding in all such cases upon which congress had authority to legislate, in pursuit of a new, untried system of their own, the consequences and extent of which could not easily be foreseen.
2. That an attempt to establish such a system would, necessarily, have consumed more time than the exigency re *256 quired ; and any regulations they could have adopted would, in all human probability, in the end, have been found extremely defective, from an impracticability which every professional man must be convinced would have existed in making special provisions of their own, adapted to every possible contingency, within the sphere of their legislative power.
3. That under these circumstances, congress, as a wise and discreet legislature, had no better resource, than in respect to all cases requiring a legislative provision, where they could not devise a satisfactory special provision of their own, to refer, generally, to the laws of the different states, which, before the institution of this government, had possessed the whole legislative authority, (with very few, if any exceptions,) as well in cas.es of general and local concern ; and therefore might be presumed to have laws adapted to all the subjects recently appropriated to their own cognizance.
4. That, in case of any such reference, we must consider of what nature the existing laws in each state were, at the time of the reference; and whether they are applicable : in which case, they must be considered in the same light, as if the words of the act itself had been adopted, and specially re-enacted by the legislative authority of the United States itself.
5. That this law must be completely applicable; because, if there be any part of the law qualifying and modifying the rest, of which a party cannot have the full benefit, this is not a case in which congress have given any authority to adopt such part, since the whole law is not applicable; of which alone congress speaks, and to which, alone, they can be supposed to refer: otherwise, part of the law might be in practice, which in itself would be oppressive; but, with the qualifications (inapplicable, and therefore rejected), might be wholesome and beneficial. It would therefore be, altogether, in the nature of a new law; and, of course, its adoption altogether unwarranted, by an authority permitting only the application of an existing one.
*257 6. That, as an exception from the general principle of a reference to the state laws in cases not specially provided for by their own, they have given a certain authority, to their courts, in regard to the form and method of proceeding; which authority, when exercised pursuant to the power given, is also equally binding, as if the regulations, accordingly made by the courts, had been a specific part of the court system established by the legislative authority itself.
These general principles being premised, let us enquire :
1. Whether this be a case within the general reference of congress to the laws of the states, or within the power given to the courts; or which is to be guided by some other law ?
2. Whether, under the authority which is to guide us on the present occasion, bail was, or was not, demandable in the instance before us ?
In considering the first point,
If the court possessed any authority, so far as that has been exercised, it is certainly in favour of a reference to the state law. But, as to this subject, I really think with the counsel for the United States, that the admission, or non-admission of bail, is a subject of legislation so important, and, in which the liberties of the citizens are so deeply concerned, that a power merely of directing the practice of the courts cannot justly be extended to a case of this kind, but it must depend upon some precise law. The same distinction would serve in respect to the process act, if that applied, which I conceive it does not; because “ suits at common lav/” certainly mean suits in a court of a common law jurisdiction, as contrasted with courts of an admiralty and maritime, or equity, jurisdiction; which every one knows are termed civil law courts; and proceed upon principles different from those which usually govern the courts of the common law, though within their proper sphere, recognized and protected by them.
*258 We are, therefore, to consider, if this be a case which comes within the meaning of a reference to the state laws; or is to be guided by some other law ?
The words of the section comprehending a reference to the state laws, are as follow : “ That the laws of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply.”
' First, it is proper to consider the import of these words, “ in all trials at common law.”
Is this a trial at common law?
A distinction is, sometimes, taken between a suit at common law, and a suit upon a statute, where the latter is grounded upon different principles from the former ; in which case, perhaps, it may properly be said that the one is a trial at common law, the other upon the statute. But it is evident that that can not be the meaning in the instance before us; because all “provisions under the constitution, laws and treaties of the United States, are excepted.” That plainly shews, that, in the sense of the legislature, unless that exception had been made, cases, arising upon the constitution, laws or treaties of the United States, might have been decided, according to the laws of the states, within the general reference to those laws, “ as rules of decision in trials at common law.” It must, therefore, have some other meaning. What can that meaning be, “ but trials in a court of a common law jurisdiction, when exercising that authority,” as contrasted with the courts of admiralty and maritime, or equity, jurisdiction; which are directed to proceed according to the principles, rules and usages which peculiarly belong to them. This brings the expression, exactly, to the same sense as the words, “ common law,” are used in the process act. Thus, in this case, though it be an action on the statute, it is an action of debt; which is a common law action, and will be tried in a common law manner, and no otherwise deviates from the common law, than that “ the *259 ground of the debt is not immemorial,” as the general principles of the common law are. Neither would a debt con-traded by bond, by an individual, to-day. Yet nobody would hesitate to call an action of debt, grounded on that bond, a common law adion. Indeed an action of debt, being an action on contract, could only be upon an express, or implied, contract. Accordingly Blackstone treats an action of debt, of this description, upon that very principle.
“ From these express contracts the transition is easy to those that are only implied by law. Which are such as reason and justice dictate; and which, therefore, the law presumes that every man has contracted to perform; and, upon this presumption, makes him answerable to such persons as suffer by his non-performance.
“ Of this nature, are first, such as are necessarily implied by the fundamental constitution of government, to which every man is a contracting party: and thus it is that every person is bound, and hath virtually agreed to pay such sums of money as are charged on him by the sentence, or assessed by the interpretation of the law. For it is a part of the original contract, entered into by all mankind, who partake the benefits of society, to submit in all points to the municipal constitutions and local ordinances of that state of which each individual is a member. Whatever therefore the laws order any one to pay, that instantly becomes a debt, which he hath, before hand, contracted to discharge.
“ On the same principle it is (of an implied original contract to submit to tho rules of the community whereof we are members) that a forfeiture imposed by the by-laws and private ordinances of a corporation upon any that belong to the body, or an amercement set in a court leet, or court baron, upon any of the suitors of the court, (for otherwise it will not be binding) immediately create a debt in the eye of the law: and such forfeiture, or amercement, if unpaid, work an injury to the party, or parties, entitled to receive it: for which the remedy is by action of debt.
*260 “ The same reason may with equal justice be applied to ^ penai statutes, that is, such acts of parliament whereby a forfeiture is inflicted for transgressing the provisions therein enacted. The party offending is here bound, by the fundamental contract of society, to obey the directions of the legislature, and pay the forfeiture incurred to such persons as the law requires.” 3 Black. Com. 159, 160, 161.
The truth is, it is sometimes necessary to distinguish between actions of debt at common law, and actions of debt upon a statute, for particular reasons, not applicable to the mode of trial. For instance, it is necessary to shew it to be “ an action on the statute,” because otherwise no cause of action will appear, a penalty in the case not existing at common law, and therefore creating no such contract. But when the cause of action is shewn, the principles of the common law pervade the whole of the trial. There may be other differences, arising from particular provisions in a statute, but this is the leading one. But to open this exposition more fully, and lead directly to the considerations upon which the construction in question ought to be founded, I will consider the nature of the common and statute law of this commonwealth, as they existed before the revolution ; and then enquire what alterations were made, in either, by the revolution itself, the articles of confederation, or the present constitution of the United States. The detail, if not immediately necessary, has a close affinity with the present subject, and will not be uninteresting, if the principles can be traced with any degree of certainty.
It has constantly, I believe, been considered to be law in this state, as in others, that the common and statute law of England, as they existed in England, at the time of the first settlement of the country, and so far as they were applicable to its situation, were in force, except in those cases where there was a special law of the Virginia legislature itself. I need not, at present, take notice of any qualification to this principle, arising from any parliamentary right supposed to have existed before the revolution, in any case where the *261 then American provinces were specially named in any act of . . parliament; no such exercise of power having been attempted, I conceive, upon a subject of this kind.
The laws of Virginia, therefore, (so far as our present Mundol. subject is concerned,) consisted before the revolution,
1. Of the common law.
2. Of the statute law.
The first comprehended all such parts of the common law, as were such in England, unaltered by any statute law, at the time of the first settlement of this country, and applicable to its situation, and which had not been altered by any act of its own legislature afterwards^
The second comprehended two subjects:
1. The statute law of England, as it existed at the time of the first settlement of this country, and so far as it was applicable.
2. The statute law of Virginia (as distinguished from the former), consisting of laws specially passed by the legislature of Virginia.
All this body of law, was of equal authority, and to be viewed exactly in the same light, as if the whole had originally existed in Virginia itself, and no part of it had been adopted from another country, the adoption of it making it completely its own.
Instead of names, therefore, which may serve to confound us, we may more properly distinguish this body of laws as the common and statute law of Virginia generally, than speak of any part of it (unless merely to shew its origin), as the common and statute law of England; by which means we may view the latter, as it really is, repealable in the very same manner, as any special act of the Virginia assembly, and by no means standing on any independent footing; which appears to have been the light in which it has been sometimes considered.
In the most arbitrary countries, even where the people have no share in the government, the sacred right of the people to choose their government is so far respected that *262 the whole origin of power is alledged to be grounded, where . .... attempt to reason at all, only upon an implied consent of the people at large.
Consequently, every government, whatever be its form, exercises its trust for the benefit of the pople; and is to be considered as having their authority for every act it performs in pursuance of its constitutional power.
In this sense, every legitimate act of government is, in effect, an act of the people themselves; it emanating irons their authority either expressly or impliedly given.
If the people could act in person, no one can doubt, that whatever they once enacted as a rule, either of government or law, must remain such, until altered by themselves.
Their inability to act personally, necessarily occasions a delegation of their power to others; but when delegated, it is of the very same nature, as if exercised by themselves in person.
Therefore every act of authority by their representatives, must remain in being until altered by themselves; or by some future act exercised by persons possessing an equal share of power.
Whence it follows, that when the people of this state, by their representatives, declared, their former government dissolved, and established a new constitution; so far as what they, in this respect, did, was inconsistent with what had been done, by their authority, before: a new law was introduced, and the old one changed: but every other part of it remained entire. By the word “ law,” in this sense, I do not mean “ law,” as distinguished from the constitution, under which a particular law hath been enacted or adopted, and which is its most usual meaning, but I mean “ the whole law of the state,” including the constitution and all laws enacted, or in being, under it; the only difference being, that a constitution, while in existence, is the fundamental law of the state, not alterable by its ordinary legislature; but all other species of laws are.
*263 I know that some are of opinion, that a revolution, ex vi termini, abolishes all laws; and throws the people into state of nature: But this I never can conceive to be the case (if it be in any country), in one where all the laws of every kind are derived mediately, or immediately, from the authority of the people themselves; who never have admitted, and I trust never will admit, that they hold any rights as mere appendages of particular persons in power; which can alone, as I conceive, afford any foundation for the opinion I am considering. If government be a mere trust for their benefit; if all its officers are their officers; and their authority of no consequence, but as originally sanctioned by them : and if they think proper to choose a new mode, in which new laws are to be made, and all laws properly enforced : What reason can there be for saying, that merely doing this (which is simply the case of a voluntary revolution), without doing, or saying, any thing more, is in fact doing more than this ? that is to say, not merely providing a new government for themselves, but actually abolishing all laws of every kind whatsoever, which subsisted under the old one ? A constitution is one thing; particular and repealable laws, subsisting under the constitution, are another. Consequently, the former may be changed, and not the latter ; and, as the authority of the people is absolutely necessary to change the one, so it is also (in some mode, whatever that may be), to change the other.
The result of my observations (if I am not mistaken in my principles) is, that the revolution of 1776, did not totally abrogate all laws subsisting before; but only such as became inconsistent with the new form of government assumed, and the new constitution established.
The common and statute law of Virginia, then, stood as follows:
1. Such parts of the common law as were unaltered by any English statute at the first settlement of the country, applicable to the situation of the people, and not altered by any subsequent act of the legislature of Virginia afterwards, and were not inconsistent with the new constitution adopted.
*264 2. Such parts of the statute law of England as were in jQYCQ at t[ie grst: settlement of the country, applicable to the situation of the people, and not altered by any subsequent act of the Virginia legislature, together with the addition of all acts, then in force, which were originally passed by the Virginia legislature itself: So far as the whole was applicable to the new situation of the people, under the change of government, and the adoption of the constitution.
If these principles are right, it equally, or more strongly, follows, that under the two great subsequent changes, arising from the articles of confederation, and the present constitution of the United States, no subsisting law was altered, but where it was plainly inconsistent with the powers, in the particular cases, transferred to the government of the United States.
In order to illustrate this point, let us consider, in particular, the nature of the change, operated by the present constitution of the United States.
By that constitution, all legislative subjects were divided into two branches; one surrendered to the government of the United States ; one retained to the states. In some instances the authority of both was a concurrent power (as in the instance of taxation, with a few exceptions): in other instances the power of the general government, I consider, as exclusive; as in the authority given, “ to establish uniform laws on the subject of bankruptcies, throughout the United States.”
The laws of the states, in regard to that share of legislative power retained to themselves, after the adoption of the constitution, remained unaltered, and were only alterable by the legislatures of the states themselves. Of this kind, for instance, is the law of Virginia, relative to a descent of lands. The legislature of the United States have no power to alter the rules of descent of lands, nor can they be affected in any manner by the government of the United States, unless, by treaty, in some singular instances, where it may be fairly presumed certain regulations, concerning *265 them, come within the legitimate objects of a treaty. Abstracted from this exception, if any person, having a right to sue for the recovery of lands in this court, brings such a suit, he can only entitle himself to recover under the laws of Virginia, as they exist at the time when the suit is brought.
In regard to the share of legislative power exclusively surrendered to the United States (which is the only part of it which concerns our present subject), the effect of this I take to have been (unless there was a manifest inconsistency, in their continuing, in being) that the subsisting laws as to such subjects did not ipso facto cease; but that they would remain as they then stood, until congress exercised its legislative authority. Of this kind, perhaps, is the power, as to bankrupt laws, which I before noticed. The moment that power is exercised, all state bankrupt laws cease; but, until it is exercised, it is, at least, questionable whether they do not remain in being; though l presume no separate legislature of the United States had a right to pass a new law upon the subject.
The law concerning bail is perhaps of this nature. It is in no manner inconsistent, that 1 can perceive, with the change of government; and therefore I should have been strongly inclined to think, had congress made no express reference to the laws of the different states as rules of decision, that, until they made a law concerning such subject, the state law, in relation to it, would have been in force.
But I have no doubt that under the express reference, by the act of congress, to the laws of the several states, as rules for our decision, fortified by the considerations I have stated, the law of Virginia, whatever it may be, concerning the requisition of bail in actions of debt by the public upon penal statutes, is that by which we are bound to decide on the present occasion.
The question then is, what is the law of Virginia upon that subject ?
The act of assembly produced, being the latest law on the subject of bail by which we can be governed, must be *266 the guide in this instance, if this particular case is compre» hended within its provisions.
If it be not, then we must consider what is the law of Virginia regulating cases of this description; whether it be a part of the common law unaltered by any statute; or a statute law relative to this subject, originally passed in England, but by adoption forming a part of the statute law of this commonwealth ; or some particular act, on the subject, passed in Virginia itself, if any?
The first enquiry is, whether a case like the present is within the act of assembly contended for at the bar, as the only rule of decision ?
Two objections are to be considered:
One insisted on by the counsel for the United States, that the Virginia act containing exceptions not applicable to the situation of the United States, the whole law is not applicable; and therefore it is not within the meaning of the act of congress.
The other is an objection suggested by the court, whether this act extends to suits by the commonwealth, or only to suits at the instance of private persons.
As to the first, I do not think it a sufficient objection; because it, in no respect, changes the principle of the application. If there be no case existing, or which can exist, under the government of the United States, of the nature of those constituting exceptions as to the law in question, the exceptions stand, as to them, as if no such exceptions existed. If there be a possibility of any case, under the government of the United States, of the nature of the excepted cases, the law, as to the exception, will then prevail as to such cases, under the government of the United States, as it does, in the general, in cases not within the exception: and therefore, in every instance, either the general law as to bail, or the special law as to the exceptions, will have the effect intended by either.
As to the objection taken by the court, and which came from myself, I am convinced on reflection it is of no weight. *267 It is a general rule in England, from whence our principles of law arc generally derived, that the king, who is the sole representative of the public, there, in all suits at law, is not bound by any act of parliament, immediately affecting his rights, unless particularly named. This, in some instances, may be grounded on mero prerogative, without any good reason, so far as it respects the public. But, in many instances, that privilege exists, for the benefit of,the public; and to prevent their sustaining an injury. This may be exemplified as to the old doctrino nullam tempus occurrit regi.’ So that a general statute of limitations affecting lands was held not to extend to the king; because the law presumed, from the variety of his public functions, that he could not have such opportunities of knowing of encroachments upon his landed property, formerly of great extent, as an individual could, of encroachments upon his; and, of course, could not rationally be expected to be as vigilant in bringing suits to redress himself. This was a case wherein the public, evidently, had an interest, as well as the king personally. A few years afterwards a limitation was put upon this prerogative, which had been abused. To a certain degree, I presume that this privilege belongs to this commonwealth, as the public officers, in the immense territory comprized within this commonwealth, cannot be expected to have early, or exact, information of encroachments upon public rights. Other instances might be shewn, in which the possession of such a privilege by the public may bo deemed proper. But, upon examining authorities, I find, that though the rule I stated as in England, bo a general one, it admits of many exceptions : and indeed the privilege seems to be confined to cases where the king might, otherwise, be deprived of some personal or legal right; and not to provisions of general law', arising from principles of public policy alone. Upon the present occasion, congress, by creating the penalty and not superadding any new provision, but leaving it to be recovered at the option of the officer, (which it expressly does, by general words having that operation in another *268 place,) by action of debt, leaves it to the usual fate of actions of debt for penalties, whatever may be the consequences that attend them. The words of the law being general, and there being no reason for excepting the case of the public, on account of any peculiar privilege to which this subject has no relation ; I conceive the act of assembly in question is that by which, under the general reference by congress, we are to be governed on the present occasion.
This opinion is further strengthened by what was mentioned at the bar, that in common actions of debt by the commonwealth, this act has been uniformly considered as the guide in the state courts. If the commonwealth is bound by the general words of the act in that case, no reason can be given, that I can suggest, why the commonwealth is not equally bound by the provisions of the act in every other case coming within its purview. Even, under the English law, as now in practice, (however introduced,) though special bail is required in actions of debt for money upon a common contract, yet, in actions of debt upon penal statutes, it is not; and the reason assigned shews that whatever construction is given in favour of a defendant in the former case applies a fortiori to the latter.
In 1 Bac. Mr. 210, it is said, “ on a penal statute, the defendant is not held to bail; because the penalty on a statute is in the nature of a fine or amercement set on the party, for an offence committed, and therefore no person ought to suffer any inconvenience by reason oí such law, till he is convicted of the offence.” For which he cites Yelv. 53. Brownl. 293.
The act of assembly being thus established to be the rule of decision, in the present case, for the reasons. I have given,
The next enquiry is, What is its operation ?
Upon this, there can be no doubt.
A capias is to be taken out, served on the party, and returned executed, but no bail to be required.
I admit that if this act was only directory to the. court, or to the clerk, but not to the sheriff, he would be bound to obey *269 the writ he received, accompanied with the directions given, . . . if any, and could not be said to act illegally in requiring bail, when under no injunction to the contrary.
But the endorsement, required by the act, is an endorsement of the true species of action, in order that the sheriff may himself sec, whether bail was, or was not, requirable by the act.
An endorsement as to the requisition of bail or not, even by the court itself, unless in cases where they have a discretion, would not justify him in requiring bail where the act did not authorize it; because it would be altogether extrajudicial.
The endorsement in this instance, therefore, (as was properly observed at the bar,) is only an endorsement of a highly respectable official character, whose opinions justly deserve very great deference, but are not conclusive.
The greatest lawyers, even the greatest judges, are liable sometimes to mistakes in opinion. Lord Mansfield has, at least, on twenty occasions, changed an opinion positively given. Lord Ilardwicke has, in some instances. So have many other illustrious characters. The greatest abilities are indeed generally accompanied with the greatest candor, and a desire, uninfluenced by any former conviction or prepossession, to do right, under any circumstances whatever.
The present instance was a case attended with many novel and difficult circumstances. They have served to embarrass the consideration of the court itself, anxious, in a new case, to proceed upon principles well examined and thoroughly reflected upon.
The consequences of our decision cannot altogether be overlooked, because the nature of these subjects, upon which penalties may be enacted by the legislature of the United States, may reasonably require a different law, from what prevails, in cases under the law itself.
The latter may indeed operate upon foreigners; but, in most cases, it will operate on citizens and residents of the country; and whose escape from prosecution may, therefore, be less apprehended.
*270 The penalties of the United States must from their nature, as frequently, if not niore so, operate upon foreigners as well as citizens; upon men, who having no residence in the country, and having committed an offence, may avoid the penalty annexed to it by speedily quitting the country.
These are consequences which may probably make a new law necessary. They are such as might well make the attorney for the United States cautious how he advised against requiring bail, unless he had the sanction of the court for such immunity. But they are consequences, which cannot alter the construction of the law; where that law is clear, as I think it is upon all the considerations I have stated, though not perhaps obvious, upon a slight reflection.
It may be lamented, in this case, that a man guilty of a most daring violation of the peace of the country, and an inhuman assault upon an innocent and meritorious officer, should escape a punishment proportionate to his offence. But no passions must mingle in the administration of justice. The law alone ought ever to be, and I trust ever will be, the guide of our decision.
Upon the present occasion, we cannot give judgment against the defendant without saying, that the marshal had a right to require special bail from him upon both the precepts which were issued. But we are of opinion, for the reasons I have given, that he had no right to require special bail upon one of them. The consequence of which is, that there must be,
Judgment for the defendant.