[Civil No. 1411.   Filed June 22, 1915.]

[149 Pac. 758.]

MIAMI COPPER COMPANY, a Corporation, Appellant, v. STATE, Appellee.

1. Action — Causes of Action — Joinder — Jurisdiction — Lumping Penalties.—Under Civil Code of 1901, paragraphs 1280 and 1291, providing that the complaint may contain several different causes of action, and that only such causes of action may be joined as are capable of the same character of relief, actions *ex contractu*, not being joinable with actions *ex delicto*, and actions to recover for injuries to the person, to property, or to character not being joinable, where the state sued to recover the penalty assessed upon any electric light or power company, by Laws of 1912, chapter 50, that should permit any employee about its plant to be on duty more than 8 hours in 24, under penalty of $100 fine for each day's violation of the act, the statute providing that the suit for such penalty may be instituted in any court of the state having competent jurisdiction, the recovery sought being for 15 violations, separately stated in the complaint, the superior court had jurisdiction of the suit, since the several penalties sued for were grounded in the same right, the parties and the causes of action the same, and each capable of the same character of relief.

2. Courts—Jurisdiction—Amount—Joinder of Causes.—Constitution, article 6, section 9, provides that the number of justices of the peace shall be provided by law, and that their jurisdiction shall not

trench on that of any court of record, except that they shall have concurrent jurisdiction with the superior court where the amount of damage claimed does not exceed $200. Article, 6, section 6, provides that the superior court shall have original jurisdiction in all cases in which the demand or the value of the property amounts to $200 exclusive of interest and costs. The state sued a corporation in the superior court to recover penalties aggregating $1,500 for 15 violations of Laws of 1912, chapter 50, forbidding any corporation operating an electric light or power plant to permit any employee about its plant to be on duty more than eight hours a day. *Held,* that the superior court had jurisdiction, although the individual penalty assessed for each violation was within the ·jurisdictional limit of justice courts, since to exclude the jurisdiction of the superior court the grant of jurisdiction to another court must be exclusive and not merely concurrent.

3. TRIAL—VERDICT—NUMBER OF JURORS REQUIRED TO CONCUR—ACTIONS FOR PENALTY.—Under ·Civil Code of 1901, paragraph 1413, providing that in civil cases, except those cognizable at common law, 9 of the 12 jurors may return a verdict, in an action by the state for the penalty under Laws of 1912, chapter 50, forbidding any electric light or power concern to work the employees in its plant more than 8 hours in each 24, a verdict by 9 jurors was bad, the suit being one cognizable at common law.

[As to whether jury in criminal case may be more or less than twelve, see note in Ann. Cas. 1914A, 872.]

4. CONSTITUTIONAL LAW — STATUTES — VESTED RIGHTS — VERDICT BY NINE JURORS—VALIDITY—RETROACTIVE OPERATION.—Although action is begun, and issue joined, before the adoption of a law authorizing nine jurors in a civil case to render a verdict, such verdict is valid, since there is no vested right in the modes of procedure.

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Reversed and remanded.

Messrs. Alderman & Elliott, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. Norman J. Johnson, County Attorney, for the State.

FRANKLIN, J.—This action, being in the nature of an action of debt, was instituted by the state of Arizona in the superior court to recover a penalty under chapter 50, Laws of 1912, Regular Session. The act provides:

"Section 1. That the business of conducting and operating an electric light plant, or any electric power plant, is hereby declared to be hazardous and dangerous to those employed therein.

"Sec. 2. That it shall be unlawful for any person, corporation or association operating or managing any electric light plant, or any electric power plant, or both, within this state, to permit, or cause to be permitted, any operating engineer or fireman, or switchboard operator, or any attendant in its service, employed in or about such plants, to be on duty more than eight hours in any twenty-four consecutive hours; except in cases of emergency when life or property is in imminent danger.

"Sec. 3. That any person, corporation or association that shall violate section 2 of this act, shall pay a fine not to exceed one hundred dollars ($100.00) for each violation of this act. Each day's violation of any of the provisions of this section shall constitute a separate offense.

"Sec. 4. That the fine, mentioned in section 3 of this act, shall be recovered by an action of debt, in the name of the state of Arizona, for the use of the state, who shall sue for it against such person, corporation or association violating this act, said suit to be instituted in any court of this state having competent jurisdiction.

"Sec. 5. That the said fine, when recovered as aforesaid, shall be paid without any deduction whatever into the general fund of the state of Arizona. . . ."

The statute directs that an action of debt in the name of the state, and for the use of the state, is the appropriate mode of proceeding to recover the prescribed penalty.

There are 15 different causes of action separately stated in the complaint, and in the aggregate the amount of money sought to be recovered is $1,500. Each cause of action, separately stated, is grounded upon an alleged violation of the statute quoted, and the liability incurred for each day's violation of the statute is a fine not exceeding $100.

The case went to the jury on June 19, 1913. The jury rendered its verdict in favor of the state in the sum of $600, and upon such verdict the judgment of the court was accordingly entered.

In submitting the case to the jury the court gave the following instruction:

"You are further instructed, gentlemen, that in this case the concurrence of three-fourths of your number shall be a sufficient number to return a verdict in the case. In case you should unanimously agree you should cause your foreman, who will be selected after you have retired, to sign that form of verdict which represents your conclusion. In case you should not agree unanimously, but nine of your number concur, those nine or more so concurring must sign the form of verdict to be agreed upon and return it into open court."

The verdict of the jury was not unanimous, but nine of such jurors did concur and returned the verdict against the defendant into court in accordance with the instruction given, and upon the verdict so rendered judgment against the defendant was entered.

There are two questions litigated on this appeal. It is first objected that the penalty of the statute, taken singly, is below the jurisdiction of the superior court, and that it may not be cumulated in the same action so that the superior court may have jurisdiction. It is next claimed that, the case presented being cognizable at the common law, the verdict in such case must be concurred in by twelve jurors as at common law, else there can be no verdict.

Paragraph 1280 of the Revised Statutes of Arizona of 1901 provides: The complaint may contain several different causes of action, and the answer may contain several different defenses. And paragraph 1291 provides: Only such causes of action may be joined as are capable of the same character of relief. Actions *ex contractu* shall not be joined with actions *ex delicto.* In actions *ex delicto,* there shall not be joined actions to recover for injuries to the person, to property, or to character; but they shall be sued for separately.

Here, then, is statutory authority for joining several different causes of action in the same complaint, subject only to the qualification prescribed by paragraph 1291, and it is quite apparent that the causes of action set forth in this complaint do not come within any of the classes disqualified. The several penalties sought to be recovered grew out of an alleged violation of the same provision of the statute; the parties to the action are the same; the several causes of action are

grounded in the same right, and are each capable of the same character of relief. When the joinder of actions is permissible, it is said by Mr. Pomeroy, "In fact, the whole proceeding is the combining of several actions into one." Pomeroy on Code Remedies, sec. 336.

The joinder of different causes of action is the subject of statutory regulation. Under our statute there is no objection to any number of distinct penalties under the same provision of the statute being separately stated in the same complaint, thereby, as Mr. Pomeroy says, in such a proceeding combining the several causes of action into one. In other words, in this action there are not 15 suits each for the recovery of a penalty, but it is one suit comprising 15 penalties, which in the aggregate amount to $1,500. In such a case it is not the penalty of the statute taken singly, which determines the jurisdiction of the superior court; but it is the cumulated penalty sought to be recovered in the one action that fixes the jurisdiction. The several penalties incurred may be sued for in one action, and the court having jurisdiction of the aggregate sum is a court of competent jurisdiction in which such suit may be instituted within the meaning of the act. One penalty may be within the jurisdiction of an inferior court, but the remedy provided is ample to adopt it to those cases of sufficient magnitude wherein the grievances of the state are in the aggregate of sufficient extent to confer jurisdiction in the superior court. See *State ex rel. Burrell* v. *Hughes,* 116 N. C. 430, 21 S. E. 971; *Maggett* v. *Roberts et al.,* 108 N. C. 174, 12 S. E. 890; *Gibson* v. *Gault,* 33 Pa. 44; *Wolverton* v. *Lacey,* Fed. Cas. No. 17,932; *Barkhamsted* v. *Parsons,* 3 Conn. 1; *Wells* v. *Cooper,* 57 Conn. 52, 17 Atl. 281.

But in another view the jurisdiction was rightly taken. The Constitutions or statutes of the different states usually provide that the jurisdiction of certain courts shall extend only to cases where the amount in controversy shall exceed or shall not exceed a certain sum, and the amount claimed by the plaintiff in good faith in the *ad damnum* clause of the complaint being the test usually employed to determine the court's jurisdiction in such a case.

By section 9 of article 6 of the Constitution it is granted:

"The number of justices of the peace to be elected in incorporated cities and towns, and in precincts, and the powers,

duties, and jurisdiction of justices of the peace, shall be provided by law; provided, that such jurisdiction . . . shall not trench upon the jurisdiction of any court of record, except that said justices shall have concurrent jurisdiction with the superior court in cases of forcible entry and detainer, where the rental value does not exceed twenty-five dollars per month, and where the whole amount of damage claimed does not exceed two hundred dollars. . . . ''

Section 6, article 6, of the Constitution, says:

''The superior court shall have original jurisdiction in all cases of equity and in all cases at law which involve the title to, or the possession of, real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand, or the value of the property in controversy amounts to two hundred dollars exclusive of interest and costs, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate nuisance; of all matters of probate; of divorce and for annulment of marriage; and for such . . . cases and proceedings as are not otherwise provided for.''

By this grant of power it is apparent that the legislature could in the exercise of its authority vest in the courts of justices of the peace exclusive jurisdiction in cases in which the demand, or the value of the property in controversy, is less than $200, exclusive of interest and costs. It is not sufficient under the constitutional sanction that the law-making power vest jurisdiction in such cases in some court other than the superior court, but to exclude the jurisdiction of the superior court the grant of jurisdiction to such other court must be exclusive. Justices of the peace have such jurisdiction only as may affirmatively be conferred on them by law. By paragraph 1280 of the Civil Code of 1913:

''They shall have jurisdiction to try and determine all civil actions when the amount involved, exclusive of interest and costs does not exceed two hundred dollars.''

The jurisdiction thus conferred is, by the statute, not exclusive, and, by virtue of the constitutional provision 'conferring on the superior court original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have

been by law vested exclusively in some other court, it is plain that the jurisdiction of justices of the peace in such cases is concurrent with that of the superior court, until such time as the legislature shall take such jurisdiction from the superior court by affirmatively conferring it exclusively in the courts of justices of the peace.

Coming to the next point urged, we think the case presented is one cognizable at the common law, and, if this be correct, then there has been no verdict rendered upon which the judgment of the court could be entered, and the cause must therefore be reversed.

The Constitution provides that: "The right of trial by jury shall remain inviolate, but provision may be made by law for a jury of a number of less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of a jury in civil cases where the consent of the parties interested is given thereto." Constitution of Arizona, art. 2, sec. 23.

Pursuant to the authority conferred, the legislature at its second special session in 1913 enacted without qualification that: In all trials of civil cases in the superior courts where a jury of twelve persons shall be impaneled to try such cause, the concurrence of nine or more jurors shall be sufficient to render a verdict therein. This act was passed and approved April 1, 1913, but in the act it was provided that: "This act shall take effect and be in force from and after the 1st day of October, 1913," and the provision of the act referred to has been codified as paragraph 532, Civil Code of 1913. This provision, therefore, only governs in the trials of causes on and after the date it went into effect, to wit, October 1, 1913. The cause at bar, however, was submitted to the jury on June 19, 1913. The statute in effect and controlling the verdict of a jury at that time is found in paragraph 1413 (section 204) of the Revised Statutes of Arizona of 1901, which provides: In all trials of civil cases, except cases cognizable at common law, in the courts of this territory (state) where a jury of twelve persons shall be impaneled to try such cause, the concurrence of three-fourths of such jury shall be sufficient to render a verdict therein.

This provision of the territorial statute was, by virtue of the Constitution, carried forward as the law of the state, and

remained in force until modified by the act which went into effect on October 1, 1913. It remains only to consider if the case is one cognizable at the common law, for if it is the point is clear that a verdict concurred in by a less number than twelve jurors is, at common law, no verdict at all; the result being a mistrial. No citation of authority is necessary in this behalf.

It must be conceded that the liability here created is of statutory origin. This statute creates a liability for an offense unknown to the common law. It gives a penalty and designates the mode and form of proceeding for its recovery. It may be admitted that this designation forms a part of the right and the liability, and all other modes of proceeding and jurisdiction not otherwise provided are excluded. 1 Corpus Juris, p. 993, sec. 109. The mode adopted is an action of debt instituted in a court of competent jurisdiction, the form of proceeding to be in the name of the state and for its use and benefit. To this extent it goes, and no further. Is an action of debt for the recovery of a statutory penalty, brought in the name of the state (sovereign) and for its use and benefit, a case cognizable at common law? We shall inquire about this.

Mr. Blackstone says: "From these express contracts the transition is easy to those that are only implied by law. Which are such as reason and justice dictate, and which therefore the law presumes that every man has contracted to perform; and upon this presumption makes him answerable to such persons as suffer by his nonperformance.

"Of this nature are, first, such as are necessarily implied by the fundamental constitution of government, to which every man is a contracting party. And thus it is that every person is bound and hath virtually agreed to pay such particular sums of money as are charged on him by the sentence, or assessed by the interpretation of the law. For it is a part of the original contract, entered into by all mankind who partake the benefits of society, to submit in all points to the municipal constitutions and local ordinances of that state, of which each individual is a member. Whatever, therefore, the laws order anyone to pay, that becomes instantly a debt, which he hath beforehand contracted to discharge. And this implied agreement it is that gives the plaintiff a right to insti-

tute a second action, founded merely on the general contract, in order to recover such damages, or sum of money, as are assessed by jury and adjudged by the court to be due from the defendant to the plaintiff in any former action. So that if he hath once obtained a judgment against another for a certain sum, and neglects to take out execution thereupon, he may afterward bring an action of debt upon this judgment, and shall not be put upon the proof of the original cause of action; but upon showing the judgment once obtained, still in full force, and yet unsatisfied, the law immediately implies that by the original contract of society the defendant hath contracted a debt, and is bound to pay it. This method seems to have been invented, when real actions were more in use than at present, and damages were permitted to be recovered thereon; in order to have the benefit of a writ of *capias* to take the defendant's body in execution for those damages, which process was allowable in an action of debt (in consequence of the statute 25 Edw. III, c. 17), but not in an action real. Wherefore, since the disuse of those real actions, actions of debt upon judgments in personal suits have been pretty much discountenanced by the courts, as being generally vexatious and oppressive by harassing the defendant with the costs of two actions instead of one.

"On the same principle it is (of an implied original contract to submit to the rules of the community whereof we are members) that a forfeiture imposed by the by-laws and private ordinances of a corporation upon any that belong to the body, or an amercement set in a court-leet or court-baron upon any of the suitors to the court (for otherwise it will not be binding), immediately create a debt in the eye of the law; and such forfeiture or amercement, if unpaid, work an injury to the party or parties entitled to receive it, for which the remedy is by action of debt.

"The same reason may with equal justice be applied to all penal statutes, that is, such acts of Parliament whereby a forfeiture is inflicted for transgressing the provisions therein enacted. The party offending is here bound by the fundamental contract of society to obey the directions of the legislature, and pay the forfeiture incurred to such persons as the law requires. The usual application of this forfeiture is either to the party aggrieved, or else to any of the king's sub-

jects in general. Of the same sort is the forfeiture inflicted
by the statute of Winchester (explained and enforced by sev-
eral subsequent statutes) upon the hundred wherein a man
is robbed, which is meant to oblige the hundredors to make
hue and cry after the felon; for if they take him they stand
excused. But otherwise the party robbed is entitled to prose-
cute them by a special action on the case for damages equiva-
lent to his loss. And of the same nature is the action given
by statute 9 Geo. I, c. 22, commonly called the black act,
against the inhabitants of any hundred, in order to make
satisfaction in damages to all persons who have suffered by
the offenses enumerated and made felony by that act. But
more usually these forfeitures created by statute are given
at large to any common informer; or, in other words, to any
such person or persons as will sue for the same. And hence
such actions are called 'popular' actions, because they are
given to the people in general. Sometimes one part is given
to the king, to the poor, or to some public use, and the other
part to the informer or prosecutor; and then the suit is called
a *qui tam* action, because is is brought by a person '*qui tam
pro domino rege, etc., quam pro se ipso in hac parte sequi-
tur*' (who prosecutes this suit as well for the king, etc., as for
himself). If the king, therefore, himself commences this
suit, he shall have the whole forfeiture. But if anyone hath
begun a *qui tam* or popular action, no other person can pur-
sue it; and the verdict passed upon the defendant in the
first suit is a bar to all others, and conclusive even to the king
himself. This has frequently occasioned offenders to procure
their own friends to begin a suit, in order to forestall, and
prevent other actions; which practice is in some measure
prevented by a statute made in the reign of a very sharp-
sighted prince in penal laws, 4 Hen. VII, c. 20, which enacts
that no recovery, otherwise than by verdict, obtained by collu-
sion in an action popular, shall be a bar to any other action
prosecuted *bona fide.* A provision that seems borrowed from
the rule of the Roman law, that if a person was acquitted of
any accusation, merely by the prevarication of the accuser,
a new prosecution might be commenced against him.'' 2
Cooley's Blackstone, pp. 972, 973, 974.

Mr. Blackstone has countenance in Lord Mansfield. Of
this man, Campbell, in his ''Lives of the Chief Justices of

England,'' says he ranked as the first and most accomplished of common-law judges; and Wellsby, whose judgment is entitled to respect, made the observation that Lord Mansfield has done more for the jurisprudence of England than any legislator or judge or author who has ever made the improvement of it his object.

In *Rann, Clerk,* v. *Green,* 2 Cowp. 474, Lord MANSFIELD says:

''Here the action, which is an action of *assumpsit,* is brought in consequence of a right liquidated by means of the statute. The statute, therefore, is the only ground of action. Without it we have no authority to make the order we did; but when the order was made, the law raised an *assumpsit.* The defendant pleads *non assumpsit.* Is anything clearer, than that the plaintiff, upon the general issue pleaded, must prove his whole case? The first thing to be proved here is the statute.''

See, also, *Atcheson* v. *Everitt,* 1 Cowp. 382, which was an action of debt upon the statute, 2 Geo. II, c. 24, sec. 7; *Rex* v. *Robinson,* 2 Burr. 800; *Stevens* v. *Watson,* 1 Salk. 44; and *Lee* v. *Clarke,* 2 East, 333, judgment pronounced by Lord Ellenborough, C. J.

At common law debt would lie to recover money due upon simple contract, express or implied, whether verbal or written, and upon contracts under seal, or of record, and on statutes by a party aggrieved.

Chitty says: ''Debt is a more extensive remedy for the recovery of money than *assumpsit,* or covenant; for it lies to recover money due upon legal liabilities, or upon simple contracts express or implied, whether verbal or written, and upon contracts under seal or of record, and on statutes, by a party aggrieved, or by a common informer, whenever the demand is for a sum certain, or is capable of being readily reduced to a certainty.'' 1 Chitty on Pleadings, 101.

Where a statute gives a forfeiture of a sum of money, or penalty, the action of debt lies, because the statute creates a direct debt, and a consequent duty. 1 Chitty on Pleadings, 104.

In the Laws of England, edited by the Earl of Halsbury (volume 1, part 7, Forms of Action—Old Forms of Action), it is said: Debt lay to recover definite sums due on records,

as judgments, recognizances of bail, or recognizances in the nature of a statute merchant; on specialties as bills or bonds, agreements to pay money, leases, mortgages, etc., on simple contracts, as for work done, services rendered, and generally, wherever *indebitatus assumpsit* would be appropriate; in *maleficio*, as against a sheriff for escape, or by common informers and persons aggrieved under penal statutes, even though the statutes did not expressly give a right of action for the penalty.

A liability imposed by statute is no greater than a common-law liability. In either case the duty to discharge it is the same. When, therefore, the statute creates a debt, or gives to the party the right to demand from another a sum of money, the law raises an implied promise to pay it. Chief Baron Comyn says:

"Debt lies upon every contract, in deed or in law. As if an act of Parliament gives a penalty, and does not say to whom nor by what action it shall be recovered, an action of debt lies upon such statute by the party aggrieved." Comyn's Digest, title "Debt," A, 1.

"Actions for penalties are civil actions, both in form and in substance, according to Blackstone. The action is founded upon that implied contract which every person enters into with the state to obey the laws." SMITH THOMPSON J., in *Stearns et al.* v. *United States*, 2 Paine, 301, 311, Fed. Cas. No. 13,341.

In *Burnham* v. *Webster*, 5 Mass. 270, Chief Justice PARSONS says:

"But if debt *qui tam* be sued against several, demanding a joint forfeiture, on a plea of *nil debet*, all the defendants ought to be found indebted, because the form of the action and plea is on a joint contract, although the debt arises from a tort."

The distinguishing feature of this action of debt is that it lies for the recovery of a sum certain, or reducible to a certainty without regard to the manner in which the obligation is incurred or evidenced. In *Stockwell* v. *United States*, 13 Wall. 531, 20 L. Ed. 491, it was said:

"Debt lies whenever a sum certain is due to the plaintiff, or a sum which can readily be reduced to a certainty—a sum requiring no future valuation to settle its amount. . . . It

is immaterial in what manner the obligation was incurred, or by what it is evidenced, if the sum owing is capable of being definitely ascertained.''

See, also, *Chaffee* v. *United States,* 18 Wall. 516, 21 L. Ed. 908; *Savings Bank* v. *United States,* 19 Wall. 227, 22 L. Ed. 80; *United States* v. *Lyman,* Fed. Cas. No. 15,647; *Meredith* v. *United States,* 13 Pet. 486, 10 L. Ed. 258; *Bullard* v. *Bell,* 1 Mason, 243, Fed. Cas. No. 2121; *Hepner* v. *United States,* 213 U. S. 103, 16 Ann. Cas. 960, 53 L. Ed. 720, 29 Sup. Ct. Rep. 474, 27 L. R. A. (N. S.) 739.

While it is, no doubt, true that the action, being based on a violation of the statute, sounds in tort (*Chaffee* v. *United States,* 18 Wall. 516, 21 L. Ed. 908), yet, as there stated, ''debt lies for a statutory penalty, because the sum demanded is certain.''

The mode in which penalties shall be enforced, whether at the suit of a private party or at the suit of the public, is a matter of legislative discretion, and where the penalty is given by statute, and there is no specified mode of recovery presented, an action of debt will lie.    30 Cyc. 1344, 1345.

Generally speaking, it is immaterial whether the obligation arose by contract or by operation of common or statute law, in what manner the obligation was incurred, or by what the obligation is evidenced, if it possesses the essential requisites of a foundation for this action debt will lie.    13 Cyc. 408.

At the common law, the action of debt is the appropriate action for the recovery of a statutory penalty, upon the ground of an implied promise, which the law annexes to the liability.    18 Am. & Eng. Ency. of Law, 274.

In *United States* v. *Mundell,* 1 Hughes, 415, 6 Cal. 245, Fed. Cas. No. 15,834, IREDELL, Circuit Judge, says:

''The truth is, it is sometimes necessary to distinguish between actions of debt at common law and actions of debt upon a statute, for particular reasons not applicable to the mode of trial.    For instance, it is necessary to show it to be 'an action on the statute,' because otherwise no cause of action will appear, a penalty in the case not existing at common law, and therefore creating no such contract.    But when the cause of action is shown, the principles of common law pervade the whole of the trial.''

In short, while the statute in question creates a new liability unknown to the common law, when such liability does arise it is then ascertained that there is a debt on a liability created by the statute, and such a case is upon the principles of the common law cognizable at law in an action of debt on the liability thus created; or, as Mr. Blackstone puts it:

"Whatever, therefore, the laws order anyone to pay, that becomes instantly a debt which he hath beforehand contracted to discharge." 3 Blackstone's Commentaries, 158.

The very pith of the matter before us is: Is this a case cognizable at the common law? In other words, is this such a case competent as a subject of judicial investigation and determination before its courts according to the principles of the common law? Upon authority the criterion of distinction between a case which is, and one which is not, cognizable at the common law, is the form of the proceeding, and not the particulars of the offense which occasions it. If the liability is created by statute, it is spoken of as a statutory liability; but, if it is created by the common law, it is designated a common-law liability. The liability, however created, though it may differ in extent is, in its essence, in the one case no greater than in the other, for when the cause of action is shown, the liability is recognized and enforced according to the principles of the common law. Of course, if the statute by which a penalty is imposed contemplated a redress or a recovery only by a proceeding unknown to the common law, the case would then be one not cognizable at the common law, because the penalty and the designated mode and form of proceeding for its recovery form a part of the right and the liability. But in the absence of a statute expressly or impliedly excluding it, as in this case, the ground of complaint is the nonpayment of a debt. It is true that the action is based upon the statute, but it is primarily founded upon that implied contract, recognized by the common law, which every citizen enters into with the state to observe its laws. This distinction we are called upon to make in the classification of cases, while purely technical, is one of those cases wherein technicality is, by the statute law, made the very pith of the matter presented for decision—a condition that upon occasion will inevitably occur as an incident to the transition from one form of government to another. But while the

classification of cases is technical, the making of it in this case determines a most substantial right of the citizen. As we said in the case of *Brown* v. *Greer,* 16 Ariz. 215, 141 Pac. 841:

"The right to a trial by jury in any case is a most substantial right, and where it has been given its observance should be rigidly enforced."

We are not under the least embarrassment in the present case to hold it one of a class which is cognizable at the common law, because our research has discovered not a single authority *per contra.* Since the early case of Partridge against Strange and others, in the time of Edward VI, reported in 1 Dyer, 74 B, which was an action of debt declared upon the statute, 32 Henry VIII, c. 9, for the penalty prescribed by it, and which action was instituted as well for the plaintiff as for the king in the court of king's bench, which was the supreme court of the common law in England, such like cases have been cognizable in the courts according to the principles of the common law.

It follows, therefore, that the cause must be reversed and remanded for a new trial, because there has been no verdict which the law of this state recognizes and upon which judgment could be entered. Under the law as it existed when the verdict was received, a concurrence therein by a number less than twelve of the jurors was in fact no verdict, but resulted in a mistrial. Since the trial of this cause, however, the law has been changed in accordance with the sanction of the Constitution, and, upon the retrial, a concurrence of nine jurors will be competent to render a verdict in the case. Though action was begun and issues joined prior to the adoption of a law authorizing nine jurors in a civil case to render a verdict, a verdict so rendered is valid, since there is no vested right in the modes of procedure. *Steinfeld* v. *Nielsen,* 15 Ariz. 424, 139 Pac. 879; *Roenfeldt* v. *St. Louis etc. R. Co.,* 180 Mo. 554, 79 S. W. 706.

Reversed and remanded, with directions to grant a new trial.

ROSS, C. J., and CUNNINGHAM, J., concur.