SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| CITY OF TUCSON, an Arizona municipal corporation, | ) ) ) | Arizona Supreme Court No. CV-04-0033-PR |
| Plaintiff/Appellant, | ) ) ) | Court of Appeals Division Two No. 2 CA-CV 02-0183 |
| v. | ) ) | |
| CLEAR CHANNEL OUTDOOR, INC, a Delaware corporation, | ) ) ) | Pima County Superior Court No. C-20003722 |
| Defendant/Appellee. | ) ) | **O P I N I O N** |
| _____ | ) ) | |

Appeal from Pima County Superior Court
The Honorable Charles V. Harrington, Judge
The Honorable Carmine Cornelio, Judge

**VACATED AND REMANDED**

_____

Opinion of the Court of Appeals, Division Two
206 Ariz. 335, 78 P.3d 1056 (App. 2003)

**VACATED**

_____

PAUL G. ULRICH, P.C.                                          Phoenix
     By:  Paul G. Ulrich

and

MICHAEL D. HOUSE, FORMER TUCSON CITY ATTORNEY          Tucson
MICHAEL G. RANKIN, TUCSON CITY ATTORNEY
     By:  Frank William Kern, III
     and  Dennis P. McLaughlin
Attorneys for Plaintiff/Appellant City of Tucson

MUNGER CHADWICK, P.L.C.                                       Tucson
     By:  John F. Munger
     and  Evelyn Patrick Rick
Attorneys for Defendant/Appellee Clear Channel Outdoor, Inc.

ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST          Tucson
     By:  Joy E. Herr-Cardillo
Attorney for Amici Curiae
Neighborhood Coalition of Greater Tucson,
The Sierra Club, Grand Canyon Chapter,
Neighborhood Coalition of Greater Phoenix,
N.A.I.L.E.M., and Luz Social Services

---

**H U R W I T Z**, Justice

¶1      This case requires us to determine the effect of Arizona Revised Statutes ("A.R.S.") § 9-462.02(C) (Supp. 2004) on numerous zoning enforcement actions filed by the City of Tucson ("the City") against Clear Channel Outdoor, Inc. ("Clear Channel").  We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution, and A.R.S. § 12-120.24 (2003).

## I.

¶2      This case comes to us as a result of almost twenty years of legal skirmishing between the City and owners of advertising billboards.  In 1985, the City adopted an ordinance regulating the size, location, and height of various signs, including billboards.  In 1986, Clear Channel's predecessor, Whiteco Metrocom, Inc.,[1] sued the City in federal court, alleging that the ordinance violated Arizona and federal law.  The district court found against Whiteco.  The Ninth Circuit consolidated Whiteco's appeal with a similar claim filed by

---

[1]     Whiteco was acquired by Eller Media Company in 1998.  Eller Media was a division of Clear Channel at the time and later changed its name to Clear Channel Outdoor, Inc.

2

Outdoor Systems, Inc., against the City of Mesa. *See Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 608-09 (9th Cir. 1993). The Ninth Circuit then certified a question to this Court, asking whether the Tucson and Mesa codes violated the Urban Environment Management Act, A.R.S. §§ 9-461 and -462 (1990). We held that they did not. *Outdoor Systems, Inc. v. City of Mesa*, 169 Ariz. 301, 819 P.2d 44 (1991). The Ninth Circuit then upheld Tucson's sign code against all remaining challenges. *Outdoor Systems,* 997 F.2d at 620.

¶3 In 1994, the legislature enacted A.R.S. § 9-462.02 (1994). 1994 Ariz. Sess. Laws, ch. 111, § 1. This statute effectively "grandfathered" existing non-conforming billboards by prohibiting municipalities from requiring their owners to waive the right to continue their use as a precondition for the issuance of a permit or other municipal approvals. A.R.S. § 9-462.02(B). The statute also gave municipalities the authority to condemn non-conforming billboards, A.R.S. § 9-462.02(A), or to pay for relocation, A.R.S. § 9-462.02(B).

¶4 Before § 9-462.02 became effective, the City sued Whiteco, seeking the removal of some non-conforming billboards. In *City of Tucson v. Whiteco Metrocom, Inc.*, 194 Ariz. 390, 983 P.2d 759 (App. 1999), the court of appeals held that § 9-462.02 applied retroactively to prohibit the City from enforcing its

3

ordinance against some, but not all, of the billboards in question.

¶5        In 2000, the legislature enacted A.R.S. § 9-462.02(C), 2000 Ariz. Sess. Laws, ch. 34, which became effective on July 18, 2000.  Section 9-462.02(C) provides:

> A municipality must issue a citation and file an action involving an outdoor advertising use or structure zoning or sign code violation within two years after discovering the violation.  Such an action shall initially be filed with a court having jurisdiction to impose all penalties sought by the action and that jurisdiction is necessary for effective filing.  Only the superior court has jurisdiction to order removal, abatement, reconfiguration or relocation of an outdoor advertising use or structure.  Notwithstanding any other law, a municipality shall not consider each day that an outdoor advertising use or structure is illegally erected, constructed, reconstructed, altered or maintained as a separate offense unless the violation constitutes an immediate threat to the health and safety of the general public.

¶6        On July 17, 2000, one day before the effective date of A.R.S. § 9-462.02(C), the City filed a 122-count complaint in superior court, each count challenging a separate non-conforming Clear Channel billboard.  On July 17, 2001, one day less than a year after the effective date of § 9-462.02(C), the City filed a second amended complaint, adding fifty-one counts concerning other billboards.  The superior court found that eighty-nine of the 173 counts involved violations that the City had discovered more than two years prior to filing.  The superior court dismissed these eighty-nine counts, holding that the new two-

4

year statute of limitations in § 9-462.02(C) barred the claims.[2]

¶7  The court of appeals affirmed.  *City of Tucson v. Clear Channel Outdoor, Inc.*, 206 Ariz. 335, 78 P.3d 1056 (App. 2003).  Relying on A.R.S. § 12-505(B) (2003), the court held that § 9-462.02(C) applied retroactively and that the new two-year limitations period ran from the time the City first discovered the zoning violations.  *Id*. at 338 ¶ 8, 78 P.3d at 1059.

¶8  We granted the City's petition for review to address the retroactivity issues in light of A.R.S. § 12-505, which governs the effect of laws changing statutes of limitations.[3]  Because this case involves a matter of statutory interpretation, we apply a *de novo* standard of review.  *Canon School Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

## II.

¶9  The court of appeals found no constitutional infirmity in applying A.R.S. § 9-462.02(C) retroactively to bar the City's existing enforcement claims.  *Clear Channel*, 206 Ariz. at 337-38

---

[2]  Of the eighty-nine dismissed claims, fifty-five were from the original complaint and thirty-four from the second amended complaint.

[3]  Our order granting review asked the parties to address the applicability of A.R.S. § 12-505(C) in their supplemental briefs.

5

¶ 7, 78 P.3d at 1058-59. The court relied on its prior opinion in *Whiteco*, which held that a municipality's power to zone and to enforce its zoning laws is a purely statutory creation, and "[e]very right or remedy created solely by a modified statute disappears or falls with the modified statute unless carried to final judgment before the repeal or modification." 194 Ariz. at 394 ¶¶ 9, 12, 983 P.2d at 763 (citations omitted). Neither party challenges that ruling before this Court. We thus start from the premise that the legislature could have enacted a statute stripping all enforcement power from the City with respect to violations of the sign code occurring before the effective date of the statute. It necessarily follows that the legislature could have barred enforcement actions for violations discovered more than two years before the date of filing suit.

¶10    But, while there is no dispute about the legislature's constitutional power to enact a statute barring enforcement actions filed before the statute's effective date, the parties disagree vehemently about whether § 9-462.02(C) is in fact such a statute. The statute is silent on the issue of retroactivity. We therefore begin with general principles concerning retroactivity of statutory enactments.

**A.**

¶11    "No statute is retroactive unless expressly declared therein." A.R.S. § 1-244 (2002). However,

6

> [t]his court has previously created an exception to the general rule requiring express language of retroactivity. Enactments that are procedural only, and do not alter or affect earlier established substantive rights may be applied retroactively. Even if a statute does not expressly provide for retroactivity, it may still be applied if merely procedural because litigants have no vested right in a given mode of procedure.

*Aranda v. Indus. Comm'n*, 198 Ariz. 467, 470 ¶ 11, 11 P.3d 1006, 1009 (2000). Thus, "statutory changes in procedures or remedies may be applied to proceedings already pending except where the statute effects or impairs vested rights." *Wilco Aviation v. Garfield*, 123 Ariz. 360, 362, 599 P.2d 813, 815 (App. 1979).[4] Arizona courts have traditionally viewed statutes of limitations as procedural for retroactivity purposes. *See, e.g., Harrelson v. Indus. Comm'n*, 144 Ariz. 369, 372, 697 P.2d 1119, 1123 (App. 1984).

¶12      Our inquiry today, however, is not guided solely by the judge-made exceptions to the general statutory rule about retroactivity. The legislature has expressly addressed the retroactivity of newly enacted statutes of limitations in A.R.S. § 12-505. That statute, entitled "Effect of statute changing limitation," provides as follows:

---

[4]      The court of appeals held that retroactive application of the two-year statute of limitations in § 9-462.02(C) to pending enforcement actions would not impair any vested rights of the City. *Clear Channel*, 206 Ariz. at 337-38 ¶ 7, 78 P.3d at 1058-59. The City does not now argue otherwise.

7

A.    An action barred by pre-existing law is not revived by amendment of such law enlarging the time in which such action may be commenced.

B.    If an action is not barred by pre-existing law, the time fixed in an amendment of such law shall govern the limitation of the action.

C.    If an amendment of pre-existing law shortens the time of limitation fixed in the pre-existing law so that an action under pre-existing law would be barred when the amendment takes effect, such action may be brought within one year from the time the new law takes effect, and not afterward.

This case requires us to determine the interplay between § 12-505 and § 9-462.02(C) with respect to the eighty-nine dismissed counts in the City's enforcement action against Clear Channel.

**B.**

¶13    The counts dismissed by the superior court fall into two categories – those filed before the effective date of § 9-462.02(C) and those filed within a year after the statute's effective date.   We analyze these two groups of claims separately.

¶14    In Arizona, a statute of limitations is tolled when a suit is commenced.  *Murphey v. Valenzuela*, 95 Ariz. 30, 33, 386 P.2d 78, 80 (1963).   A suit is commenced by the filing of a complaint.  *Id.;* Ariz. R. Civ. P. 3.   The parties agree that prior to the effective date of § 9-462.02(C), the City, a political subdivision of the State, was exempted from the application of any statute of limitations.  *See* A.R.S. § 12-510

8

(2003) (providing that "the state shall not be barred by the limitations of actions prescribed in this chapter"); *Tucson Unified Sch. Dist. v. Owens-Corning Fiberglas Corp.*, 174 Ariz. 336, 849 P.2d 790 (1993) (holding that political subdivisions of the state are exempt from statutes of limitations, regardless of the nature of claim brought). Therefore, it is plain that the fifty-five counts in the original complaint were timely when filed.

¶15      The question is thus whether a timely filed action is barred because the action would have been untimely under a statute of limitations that became effective after the filing. The Territorial Supreme Court addressed this very issue in *Curtis v. Boquillas Land & Cattle Co.*, 9 Ariz. 62, 76 P. 612 (1904). At the time the suit in question was commenced, no statute of limitations governed actions for the recovery of lands by one claiming title against another holding by peaceable and adverse possession. *Id*. at 67, 76 P. at 614. A subsequently enacted statute provided for a ten-year limitations period. *Id*. *Curtis* held that "an act which merely limited the time within which an action may be brought does not apply to a suit which, though commenced after the passage of the act, was pending at the time the same took effect." The Court noted that "[t]he logic of this rule is apparent, particularly when applied to a case like the one at bar, where the action was begun before

9

the act took effect, and at the time no other statute of limitations was in force as to such actions." *Id*.[5]

¶**16**     *Curtis* states the settled rule:  absent an express legislative statement to the contrary, an act that limits the time in which an action can be brought does not apply to a suit pending at the time the act becomes effective.  *See Vreeland v. Town of Bergen*, 34 N.J.L. 438, 1871 WL 6747 (N.J. 1871); *Mass. Bonding & Ins. Co. v. Bryant*, 189 So. 2d 614 (Fla. 1966); *People ex rel. Dep't of Rev. v. Nat'l Liquors Empire, Inc.*, 510 N.E.2d 495 (Ill. App. 1987); *City of Willmar v. Short-Elliott-Hendrickson, Inc.*, 475 N.W.2d 73 (Minn. 1991); *cf. State v. Simmons*, 290 N.W.2d 589, 594 (Iowa 1980) (declining to apply statute imposing statute of limitations on claims to riverbed ownership to actions pending when the statute was enacted).

¶**17**     Clear Channel argues that *Curtis* is distinguishable because it involved the "vested rights" of a private plaintiff to bring suit, and any contrary holding would have raised due process concerns.[6]  But while *Curtis* did involve a private

---

[5]     *Curtis* relied in part on paragraphs 2974 and 4243 of the Code of 1901.  These sections were the precursors of today's A.R.S. § 12-505(A) (2003) and A.R.S. § 1-250 (2002), respectively.

[6]     When vested rights of private parties are involved, constitutional considerations prevent an amended statute of limitations from immediately barring a claim that would have been timely filed under the previously existing statute. *Sohn v. Waterson*, 84 U.S. 596, 599 (1873) ("[A] literal

10

plaintiff, the case stands for a broader principle — that changes in modes of procedure do not invalidate completed procedural actions valid under the law in effect at the time they were taken.[7] *See Cummings v. Rosenberg*, 12 Ariz. 327, 328-29, 100 P. 810, 811 (1909) (citing *Curtis* for the proposition that an amended statute of limitations has no application to an action "brought before it took effect").  Any contrary approach would wreak havoc on pending cases.  For example, if the legislature enacted a statute mandating personal service of every complaint which was silent on the issue of retroactivity, we would surely not apply the statute to invalidate services that were valid under the law in effect at the time they were made.

_____

interpretation of the statute would have the effect of absolutely barring such action at once.  It will be presumed that such was not the intent of the legislature.  Such an intent would be unconstitutional.").  Rather, a "reasonable time" must be given for a plaintiff to commence the action either before the bar takes effect or after the effective date of the new statute.  *Terry v. Anderson*, 95 U.S. 628, 632-33 (1877); 51 Am. Jur. 2d *Limitation of Actions* § 45 (2000).

[7]  Several cases holding that newly enacted statutes of limitations do not apply retroactively to cases timely filed before the effective date of the new act involved claims by public entities, and thus would not seem to rest on the "vested rights" doctrine. *See, e.g., City of Willmar,* 475 N.W.2d at 75-76 (involving suit by city against designer of improvements to wastewater facility); *Nat'l Liquors Empire*, 510 N.E.2d at 496 (involving suit by Illinois Department of Revenue for unpaid sales taxes); *Simmons*, 290 N.W.2d at 594 (involving state's petition concerning ownership of riverbed).

¶18    *Miami Copper Co. v. State*, 17 Ariz. 179, 149 P. 758 (1915), illustrates the rule. That case involved a law permitting civil cases to be decided upon the concurrence of nine of twelve jurors in a civil case; prior law had required a unanimous verdict. *Id*. at 185, 149 P. at 760. After the passage of the law, but before its effective date, the superior court authorized nine jurors to issue a verdict. Although recognizing that the change in the law was purely procedural and that "there is no vested right in the modes of procedure," *id*. at 193, 149 P. at 763, this Court nonetheless held that the procedure in effect at the time the case went to the jury governed. *Id*. It therefore reversed the judgment of the superior court based on a nine-juror verdict, even though the result would be to remand for a trial in which nine jurors could issue a verdict under the newly applicable mode of procedure. *Id*. at 193, 149 P. at 763.

¶19    *Miami Copper* thus stands for the same proposition as *Curtis* — procedural changes in the law are not retroactive when the procedure at issue was completed in accordance with the law then in effect. The legislature can, of course, abrogate pending causes of action by municipalities and can therefore also make procedural changes that accomplish the same effect retroactively. But nothing in § 9-462.02(C) suggests that the

12

legislature intended such a result.[8]  Indeed, the legislature was well aware of its powers to terminate pending enforcement actions; it did so in 1994 in enacting subsections A and B of the same statute.  If the legislature intended to do so in subsection C, it surely would have chosen a mechanism far more direct than simply enacting a statute of limitations.  *See Bowles v. Ariz. Dep't of Rev. (In re Estate of O'Connor)*, 139 Ariz. 450, 453, 679 P.2d 96, 99 (App. 1984) ("The legislature is perfectly capable of expressing a statutory bar when it so intends and we will not read such a result into a statute absent a clear expression.").

¶**20**     The remaining question as to the fifty-five claims filed before the effective date of § 9-462.02(C) is whether the new statute of limitations was made applicable to them by virtue of § 12-505(B).  No Arizona case has ever read § 12-505(B) as barring claims filed *before* the effective date of a new statute of limitations, and we decline to do so.  *Cf. Hershey v. Rich Rosen Constr. Co.*, 169 Ariz. 110, 115 n.1, 817 P.2d 55, 60 n.1 (App. 1991) (noting in dictum that an amended statute of limitations cannot apply retroactively to suit filed before the effective date of the act).  The most reasonable reading of each of the provisions of § 12-505 is that each was meant to apply to

---

[8]     As Justice Berch's concurring and dissenting opinion demonstrates, the legislature likely had precisely the opposite intent in enacting § 9-462.02(C).

13

suits filed after the effective date of a new statute of limitations and to specify what statute of limitations would now apply. As to claims filed before the effective date of the new statute, absent an express legislative statement to the contrary, the law in effect at the time of filing applies.

### C.

¶21  The thirty-four claims raised for the first time in the second amended complaint were filed after § 9-462.02(C) became effective. Section 12-505 therefore provides the statutory framework for analysis of the statute of limitations issue as to these claims.

### 1.

¶22  The City and Clear Channel agree that § 12-505 controls the disposition of these thirty-four added claims; the parties disagree, however, both as to whether subsection B or C of the statute applies and as to the interpretation of these subsections. Each party contends that § 12-505 was meant to incorporate the common law; each party therefore relies upon and argues the construction of various decisions interpreting the common law and predecessor versions of § 12-505. Analysis of those arguments thus requires a brief historical review.

¶23  We start with the apt observation of the Territorial Supreme Court in 1904:

> Upon few, if any, branches of the law, is there such contrariety of view expressed by the courts as upon the effect to be given new statutes of limitation upon causes of action existing at the time the statutes go into effect.

*Curtis*, 9 Ariz. at 65, 76 P. at 613. As *Curtis* noted, the "general rule" was that, absent a contrary legislative expression, new statutes were given only a prospective application and were not applied to causes of action accruing before the effective date of the statute. *Id*.

¶24    Since at least 1901, however, Arizona has had statutes expressly speaking to this issue. The first was paragraph 2974 of the Civil Code of 1901, which stated:

> No one of the provisions of this title shall be so construed as to revive any claim which is barred by pre-existing laws; and all claims against which limitation under said laws had commenced to run shall be barred by the lapse of time which would have barred them had those laws continued in force.

Ariz. Civ. Code 1901 ¶ 2974. This provision neatly captured the general common law rule: causes of action accruing before the effective date of the new statute were governed by the statute of limitations in effect at the time of accrual; causes accruing after the effective date of the new statute were governed by that new statute. *See Crowell v. Davenport*, 11 Ariz. 323, 327-28, 94 P. 1114, 1115 (1908) (holding that suit on a contract cause of action that had accrued prior to effective date of new statute was governed by statute in effect at time of accrual).

15

¶25 Paragraph 2974 did not address the situation in which the legislature chose to apply a new statute of limitations to causes of action existing before its effective date. In such cases, the rule was that the plaintiff must be provided a reasonable period before the new statute takes effect to bring his action. *See Cummings*, 12 Ariz. at 329-32, 100 P. at 813 (holding that the time between the passage of a new statute of limitations and its effective date was an adequate period); *Work v. United Globe Mines*, 12 Ariz. 339, 345-46, 100 P. 813, 815 (1909) (same). This rule was based not upon paragraph 2974, but rather upon the notion that allowing a new legislative enactment to abrogate an existing cause of action presented constitutional difficulties. *See Cummings*, 12 Ariz. at 330, 100 P. at 812; *see also supra* note 6. Paragraph 2974 remained essentially unchanged for nearly thirty years. *See* Ariz. Civ. Code 1913 ¶ 733. The Revised Code of 1928, however, contained a significant change to this statute. Section 2073 of that Code, entitled "Amending statute," provided:

> A cause of action barred by pre-existing laws is not revived by the amendment of such law enlarging the time; if not so barred, the time fixed in the new law shall govern such action; if the new law shortens the time fixed in the pre-existing law, and thereby such cause would be barred when the new law takes effect, such cause of action may be brought within one year from the time the new law takes effect, and not afterward.

16

Ariz. Rev. Code 1928 § 2073. This provision was carried forward into the 1939 Code, without substantive change, as § 29-308. In 1956, this statute was re-codified as A.R.S. § 12-505 with just one substantive change: the three clauses were broken into subparts A, B, and C. This statute remains in effect today without change.

¶26    Subsection A of § 12-505 thus incorporates the first clause of former paragraph 2974. But the 1928 codification and all subsequent versions do not contain the second clause of paragraph 2974, which codified the common law rule that, absent a specific indication of legislative intent to the contrary, new statutes of limitations do not apply to causes of action accruing before the effective date of the new statute. Rather, subsection B provided that the new statute *would* apply to such causes of action. Subsection C set forth a qualification to subsection B: when application of the new statute would result in barring an existing cause of action, the plaintiff had one year from the effective date of the new statute to bring suit. Thus, while subsection C is in part grounded on the common law rule that a plaintiff must always be given a reasonable time to bring suit after a new statute of limitations takes effect, it is also a recognition that another common law rule – that new statutes of limitations were generally interpreted as prospective only — no longer applied.

17

¶27 Therefore, the parties' arguments about how the holdings in various cases such as *Cummings* and *Crowell* apply to the current situation are largely irrelevant. Those cases either interpreted paragraph 2974 of the 1901 Code or applied general rules because paragraph 2974 was silent as to the situation before them. Our job instead is to apply § 12-505, a statute markedly different from both paragraph 2974 and the general rules in effect in the first decade of the twentieth century.

**2.**

¶28 Section 12-505(A) provides that "[a]n action barred by pre-existing law is not revived by amendment of such law enlarging the time in which such action may be commenced." Because the City's thirty-four causes of action in the second amended complaint were not barred by the law pre-existing the enactment of § 9-462.02(C), no party contends that this subsection applies to this case.

¶29 Subsection B provides that "[i]f an action is not barred by pre-existing law, the time fixed in an amendment of such law shall govern the limitation of the action." The parties agree that this section applies on its face to this case, because the City's thirty-four claims were not barred by pre-existing law. But the parties offer sharply differing interpretations of subsection B.

¶30     The City claims that subsection B allows it two years from the effective date of § 9-462.02(C) to bring any causes of action accruing before that date.  This argument relies heavily on language in *Crowell* stating that

> [t]he rule for the construction of new, re-enacted, or amended statutes of limitation applied in some jurisdictions is that, unless a contrary intent be expressed, they are to be given a prospective effect so as to extend the period of time within which suits might be brought on existing causes of action to the full time prescribed by such statutes counting from the time they take effect.

11 Ariz. at 326, 94 P. at 1115.  *Crowell* eventually held, however, that this rule did not apply in Arizona in light of paragraph 2974, and that causes of action accruing before the effective date of a new statute were governed by the old statute of limitations.  *Id*. at 327-28, 94 P. at 1115.

¶31     The City's argument suffers from another flaw.  If subsection B is construed as the City suggests, subsection C is completely superfluous — there would never be any case in which the cause of action is barred by the amended statute, because in each case the plaintiff would be given the full period of the new limitations statute, starting from the time that statute took effect, in order to bring suit.  Whenever possible, we do not interpret statutes in such a manner as to render a clause superfluous.  *State v. Deddens*, 112 Ariz. 425, 429, 542 P.2d 1124, 1128 (1975).

19

¶32     Clear Channel argues that subsection B does not preserve the City's claims because under the new statute of limitations each claim must be brought within two years from discovery, and there is no dispute that each of the thirty-four claims in the second amended complaint was brought more than two years after discovery.  The court of appeals so held.  *Clear Channel*, 206 Ariz. at 338 ¶ 8, 78 P.3d at 1056.  We agree.  The language of § 12-505(B) is "clear on its face," and must be "applied according to its plain meaning."  *Id.; accord Bilke v. State*, 206 Ariz. 462, 464-65 ¶ 11, 80 P.3d 269, 271-72 (2003).

¶33     We part company with the court of appeals, however, on its construction of subsection C.  That subsection provides that "[i]f an amendment of pre-existing law shortens the time of limitation fixed in the pre-existing law so that an action under pre-existing law would be barred when the amendment takes effect, such action may be brought within one year from the time the new law takes effect, and not afterward."  The court of appeals held that this statute did not apply when "an action is not barred by pre-existing law," and that only subsection B applied in that circumstance.  *Clear Channel*, 206 Ariz. at 338 ¶ 8 n.5, 78 P.3d at 1059.[9]

_____

[9]     Clear Channel argues that the City cannot rely upon § 12-505(C) because it "abandoned" that position below.  Even assuming *arguendo* that the City did so, it is clear that we may consider this argument.  While we generally will not consider

20

¶34    The difficulty with the court of appeals' interpretation is that it also renders subsection C superfluous. Subsection A already makes clear that if an action were barred by pre-existing law, a new or amended statute of limitations does not serve to avoid the statute of limitations bar. If subsection B were meant to cover all other situations — those in which the claims were not barred by pre-existing law — subsection C would cover no claims at all. We do not construe statutes as containing useless provisions unless no other construction is possible. *Deddens*, 112 Ariz. at 429, 542 P.2d at 1128; *Bilke*, 206 Ariz. at 464 ¶ 11, 80 P.3d at 271 ("The court must give effect to each word of the statute.").

¶35    There is in this case a more sensible reading of the statute, and one that gives force to all of its provisions:

_____

arguments not presented below, *Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 104, 692 P.2d 280, 283 (1984), this is a rule of prudence, not of jurisdiction. "When good reason exists, this court may and will entertain such questions." *Jimenez v. Sears, Roebuck & Co.*, 183 Ariz. 399, 406 n.9, 904 P.2d 861, 868 (1995). One such "good reason" is when the issue is of statewide importance. *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503, 733 P.2d 1073, 1086 (1987); *Barrio*, 143 Ariz. 101, 692 P.2d at 283.

Review of the subsection C issue is plainly proper here. First, this is an issue of first impression and of statewide significance. Second, the court of appeals expressly took up the issue. Third, in its order granting review, this Court gave notice of its interest in subsection C and requested supplemental briefing on the issue. Fourth, because both parties agree that this case turns on interpretation of § 12-505, there is no logical reason not to address all applicable subsections of that statute.

21

subsection C covers those cases in which the cause of action is not barred by pre-existing law, but when application of the new statute of limitations would bar the claim. Put differently, subsection C covers a subset of the cases described in the first clause of subsection B — actions "not barred by pre-existing law" — but only those for which application of the new statute of limitations would bar the action.

¶36    This reading, which is compatible with the plain language of § 12-505, results in the statute providing a logical, integrated approach to new statutes of limitations. Subsection A provides that such a statute does not revive claims barred by limitations before the effective date of the statute. Subsection B provides that the new statute will govern claims not so barred, with one qualification, set forth in subsection C:   if, under subsection B, a claim would be barred by application of the new statute, the claimant has one year after the effective date of the new statute to bring suit.

¶37    Clear Channel does not disagree with this general reading of subsection C.  It argues, however, that subsection C does not apply in this particular case.   Clear Channel's argument is grounded in the language of the first clause of subsection C, which makes that statute applicable only when "an amendment of *pre-existing law* shortens the time of limitations *fixed* in the pre-existing law" (emphasis added).  Clear Channel

22

contends that this language excludes the City's suit from the coverage of subsection C because, prior to the enactment of § 9-462.02(C), there was no statute of limitations applicable to the City's claims.

¶38    To the extent that Clear Channel's argument is that there was no "pre-existing law" governing the time in which the City's claims were required to be filed, it fails as a matter of statutory interpretation.  Such an argument presumes that the "pre-existing law" must be a specific statute of limitations. But the legislature did not use the term "statute" or "statute of limitations" in § 12-505(C); it referred in this subsection, as in the balance of § 12-505, to "pre-existing *law*."  "Law" encompasses more than just statutes; it also includes constitutional provisions, the common law, and judicial decisions.  *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 378, 710 P.2d 1025, 1033 (1985) (recognizing that law emanates not just from statutes, but also constitutions and judicial opinions).  *See* Black's Law Dictionary 889 (7th ed. 1999) (defining "law" as "[t]he aggregate of legislation, judicial precedents, and accepted legal precedents; the body of authoritative grounds of judicial and administrative action").[10]

---

[10]    *See State v. Wise*, 137 Ariz. 468, 470 n.3, 671 P.2d 909, 911 n.3 (1983) (noting that where contested words were not defined in the statute, and where there is "no indication that the Legislature intended that either word be given an

23

While the legislature can, of course, provide a contrary definition of "law," nothing in the language of A.R.S. § 12-505(C) suggests the legislature intended to do so.

¶39 Section 9-462.02(C) thus plainly "shortens the time" provided by prior law in which the City must bring its claims. Under the law in effect before the effective date of § 9-462.02(C), the City could bring those claims whenever it chose. After the effective date of the new statute, it was required to bring the claims within two years of discovery of the violation.

¶40 Clear Channel also argues that, because § 12-505(C) applies only when a statute "shortens the time of limitation fixed in the pre-existing law," the subsection cannot apply here, because there was no specific time of limitation "fixed" before the effective date of § 9-462.02(C). The argument has some superficial appeal, but we are required to read a statute in such a way as to give it a fair and sensible meaning. *Robinson v. Lintz*, 101 Ariz. 448, 452, 420 P.2d 923, 927 (1966). "Fixed" can sensibly be read as synonymous with "provided," and pre-existing law here provided express guidance as to the time in which the City's claims could be brought:  under § 12-510,

_____
extraordinary meaning, reference to an established, widely respected dictionary for the ordinary meaning of these words is acceptable").

24

the City could take as much time as it desired.  It cannot be contested that § 9-462.02(C) "shortens" that time period.[11]

**¶41**      In the end, Clear Channel's argument is really that § 12-505(C) was not meant to apply to claims by governmental agencies, at least when no statute previously imposed a specific time limitation on the claims.  But nothing in either the specific language or the history of § 12-505 supports this hypothesis.  Moreover, because Clear Channel agrees that subsections A and B *do* apply to claims by governmental agencies, its interpretation of subsection C requires us to conclude that the legislature wanted some parts of the statute, but not others, to apply to governmental claims.  Again, such a conclusion is supported by neither the language of the statute nor its history.

---

[11]     Justice Berch suggests that our interpretation of § 12-505(C) produces a "counterintuitive" result when this subsection is applied to certain hypothetical claims involving no pre-existing statute of limitations. *Infra* ¶¶ 76-77.  However, the very same "counterintuitive" result occurs when a statutory amendment alters a pre-existing statute of limitations in these hypothetical situations.  For example, if the legislature changed the statute of limitations for a particular claim from ten years to one year, those with nine-year-old claims would have, under the plain terms of § 12-505(C), one year from the effective date of the new statute to file suit.  Yet, those with claims that were six months old would have only six months under § 12-505(B) to file suit.  Thus, our interpretation of § 12-505(C) produces the same result whenever, in the words of the subsection, a statutory amendment "shortens the time of limitation fixed in the pre-existing law so that an action under pre-existing law would be barred when the amendment takes effect," whether or not the "pre-existing law" was a specific statute of limitations or some other provision of law.

25

¶42    The most logical reading of § 12-505 is one that makes it applicable to the entire universe of unfiled claims allegedly affected by new or amended statutes of limitation.  Subsection A provides that claims under which the time to file had already passed under the old statute remain barred.  Subsection B provides that the new statute generally applies to all other claims, but an express qualification to the general rule is set forth in subsection C.  If a claim would have been timely filed under the old law but not the new, under subsection C the plaintiff has one year from the effective date of the new law to file suit.

### 3.

¶43    The effective date of A.R.S. § 9-462.02(C) was July 18, 2000.  The thirty-four claims in the amended complaint were filed on July 17, 2001.  If these claims were time-barred on the effective date of § 9-462.02(C) by the new statute of limitations, they were timely under § 12-505(C) because they were filed within one year of the effective date of the new act.[12]

---

[12]    In a post-argument filing, Clear Channel suggests that some of the thirty-four claims may not have been barred on the effective date of § 9-462.02(C) by virtue of the new statute of limitations because they were discovered less than two years before the effective date.  If this is so, Clear Channel argues, § 12-505(B) applies, and any claim eventually filed more than two years after discovery is time-barred.  Given their dispositions of this case, neither the superior court nor the

26

## III.

¶**44** For the reasons above, we vacate the opinion of the court of appeals and the judgment of the superior court dismissing the City's claims and awarding attorneys' fees and costs to Clear Channel. Because Clear Channel was not the prevailing party, we deny its request pursuant to A.R.S. § 12-348 (2003) for attorneys' fees incurred in this Court.[13] This case is remanded to the superior court for further proceedings consistent with this opinion.

_____
Andrew D. Hurwitz, Justice

CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Michael D. Ryan, Justice

_____

court of appeals had occasion to address this argument, which Clear Channel may raise in the superior court on remand.

[13] The City filed a "Motion for Review of Attorneys' Fees Award and Motion to Strike and Deny Clear Channel's Supplement to Response to Petition for Review." Because this opinion vacates the awards of attorneys' fees below and denies the attorneys' fees requested by Clear Channel in its "Supplement to Response to Petition for Review," the City's motion is denied as moot.

27

**B E R C H**, concurring in part and dissenting in part

¶45        I agree with my colleagues regarding the continued validity of the fifty-five dismissed claims filed before the effective date of A.R.S. § 9-462.02(C), *see* Op. ¶¶ 14-20, but disagree regarding the treatment of the second group of claims, those filed on July 17, 2001.  The majority applies A.R.S. § 12-505(C) to the latter group.  I would instead follow the path of the trial court and court of appeals and analyze the validity of these claims under § 12-505(B), which requires reference to § 9-462.02(C).

¶46        This case turns initially on the interpretation of A.R.S. § 12-505, which specifies the limitations period applicable to cases for which the legislature has changed the limitations period during the life of an unfiled claim.  All parties agree, as have the courts, that § A, which discusses actions barred by pre-existing law, does not apply to this case.  The debate centers on whether the case is controlled by § 12-505(B) or § 12-505(C).

¶47        Section B provides that "[if] an action is not barred by pre-existing law, the time fixed in an amendment of such law shall govern the limitation of the action."  By its terms, it appears to apply in this case because the City's right to file actions to enforce sign ordinances was "not barred by pre-

28

existing law." *See* A.R.S. § 12-510 (providing that the state is not "barred by the limitations of actions prescribed in this chapter").

¶**48**      The majority, however, relies on § C, which applies if "an amendment of pre-existing law shortens the *time of limitation fixed in the pre-existing law*." A.R.S. § 12-505(C) (emphasis added). This is the point on which I part company with the majority. Unlike my colleagues, I agree with the parties and the judges of the trial court and court of appeals that no time within which the City had to file its claims was "fixed in the pre-existing law."

¶**49**      As the majority opinion correctly notes, "law" may refer to other than statutory law. Op. ¶ 38. Yet when the meaning of a word is unclear, as a guide to its significance, we look at the statute as a whole and examine how the word is used in related provisions of the statute. *See People's Choice TV Corp. v. City of Tempe*, 202 Ariz. 401, 403, ¶ 7, 46 P.3d 412, 414 (2002) (interpreting a statute requires construing the statute as a whole); *Golder v. Dep't of Revenue*, 123 Ariz. 260, 265, 599 P.2d 216, 221 (1979) (noting that "words of a statute must be construed in conjunction with the full text of the statute").

¶**50**      All three sections of § 12-505 refer to "pre-existing law," and in all instances, the legislature plainly meant

29

statutory law. Section A, for example, says that "[a]n action barred by pre-existing law is not revived by amendment of such law enlarging the time in which such action may be commenced." A.R.S. § 12-505(A). The pre-existing law that would bar the filing of an action is a statute of limitations, not a case.[14] This conclusion is bolstered by the legislature's use of the word "amendment." *Id.; see also* A.R.S. § 1-213 (2002) (requiring that words be construed according to their common meaning); *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990) (same). Statutes are amended; cases are affirmed, reversed, overruled, or distinguished.

¶51      Section B contains similar language. It provides that "[i]f an action is not barred by pre-existing law, the time fixed in an amendment of such law shall govern the limitation of the action." A.R.S. § 12-505(B). Here again, the legislature refers to "amendment." *Id*. It seems, then, that the legislature relied on the common understanding that the "pre-existing law" that would bar the filing of a case is a statute of limitations, which could be amended.

¶52      Such an understanding is consistent with the use of the term in § C. It says that "[i]f an amendment of pre-existing law shortens the time of limitation fixed in the pre-

---

[14]      Note, for example, that defenses such as laches cannot be raised until a case has been brought. Thus the statute plainly did not intend such common law notions.

30

existing law so that an action under the pre-existing law would be barred when the amendment takes effect, such action may be brought within one year from the time the new law takes effect, and not afterward." A.R.S. § 12-505(C). Again the section speaks of amendments (presumably by the legislature, because courts do not enact "amendments") to pre-existing laws (presumably statutes) that shorten the "time of limitation fixed in the pre-existing law."

¶53    When practitioners need to know how long they have to file an action, they look to the statutes of limitations set forth in the state's revised statutes. Thus to find a "time of limitation fixed in the pre-existing law," they would look to the statutes of limitations.

¶54    But in this case the statutes of limitations do not fix any time within which the City must bring its sign code violation actions. To the contrary, § 12-510 exempts the state from the operation of the statutes of limitations. A.R.S. § 12-510 (2003); *see also Maricopa County v. Rodgers*, 52 Ariz. 19, 78 P.2d 989 (1938) (holding that statute of limitations does not apply to political subdivisions for claims to recover public money); *City of Bisbee v. Cochise County*, 50 Ariz. 360, 72 P.2d 439 (1937) (holding city not subject to statute of limitations in action to recover revenue). Therefore, the legislature had not fixed a "time of limitation . . . in the pre-existing law"

31

that would have precluded the City from bringing the claims at issue. As a result, the majority's position that there was a "time fixed in the pre-existing law" within which the City had to file billboard violation claims, or be barred thereafter, Op. ¶ 39, fails to give meaning to "every word" and "phrase" of the statutory provision, as we have been commanded to do, so that none is rendered superfluous or insignificant. *See Bilke v. State*, 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003); *Hohokam Irrigation & Drainage Dist. v. Ariz. Pub. Serv. Co.*, 204 Ariz. 394, 398, ¶ 15, 64 P.3d 836, 840 (2003).

¶55 Instead, A.R.S. § 12-505(B) applies if an action is not barred, the legislature passes an amendment that purports to shorten the statute of limitations, and the time for filing has not yet run. That is what happened here. Before the limitations period expired on the City's claims, the legislature passed § 9-462.02(C), which shortened the time of limitations from an infinite amount of time to within two years of discovery of a violation. In such cases, § 12-505(B) requires reference to the amended law, which in this case is § 9-462.02(C).

¶56 As the majority opinion correctly notes, § 9-462.02(C) was not in effect and therefore did not bar the first set of claims filed July 17, 2000. Op. ¶ 14. With respect to the second set of claims filed July 17, 2001, however, the limitations period in § 9-462.02(C) bars any claims that were

32

filed more than two years after they were discovered.

¶57     This is where this case becomes particularly problematic.   The City urges that while the language of § 9-462.02(C) requires that claims be filed within two years of the discovery of a violation, the legislative history reveals that the legislature did not intend such a result.   The City concedes that the legislature has the power to eliminate the City's claims, *see City of Bisbee*, 50 Ariz. at 369, 72 P.2d at 443, but argues that the legislative history of § 9-462.02(C) shows the legislature's and stakeholders' clear understanding that the statute would apply prospectively only and that the City would be allowed two years from the effective date of the statute to file its claims.   The City urges us to consider the legislative history because the statute is silent on the issue of retroactivity.

¶58     The history that exists shows that the language of A.R.S. § 9-462.02(C) was first offered in House Bill 2671 in the 1999 legislative session, the year before it actually passed. H.B. 2671, 44th Leg., 1st Reg. Sess. (Ariz. 1999).   That bill contained a clause making the bill retroactive. *Id*.   It did not pass.   In the 2000 legislative session, virtually the same bill was again offered as H.B. 2559, this time without the retroactivity clause.   H.B. 2559, 44th Leg., 2d Reg. Sess. (Ariz. 2000).   It passed.   This legislative history suggests

33

that the legislature did not support the retroactive application of the statute.

¶59    Additional evidence indicates that at least some members of the Senate intended H.B. 2559 to apply prospectively only.  In the Senate Finance Committee hearing on March 9, 2000, Representative Joe Hart, the bill's sole sponsor, stated that his bill would not "nullify any existing violations, court actions, or outstanding disputes.  This bill does require filing of existing known violations within two years of the effective date of the bill."  *Ariz. State Senate Fin. Comm. Hearing on H.B. 2559*, 44th Leg., 2d Reg. Sess. (Ariz. 2000) (Statement of Rep. Hart).

¶60    At the same committee hearing, Wendy Briggs, the lobbyist/attorney for the Arizona Outdoor Advertising Association, testified in support of the bill.  She stated, in reference to potential causes of action in Tucson, that the City "would have two years from the effective date of this bill to file those causes of action."  *Id*. (Statement of Ms. Briggs). With respect to § 12-505(B), the statute on which the lower courts decided this case, Ms. Briggs testified as follows:

> There is a statute in Title 12, 12-505(B), which
> basically says if an action is not barred by
> preexisting law and the law is going to be amended,
> the amendment governs the limitation of action if it's
> new, which means the effective date, from the
> effective date of this legislation they would have two
> years to file on those causes of action.

34

*Id.*

**¶61**     At that hearing, Tucson Senator George Cunningham sought to cement Outdoor Advertising's position that the City would not be prohibited from going forward with its claims against the billboard companies.  *Minutes of Senate Comm. on Fin.*, 44th Leg., 2d Reg. Sess., 10 (Mar. 9, 2000).  He asked Ms. Briggs if her client would be willing to amend the bill to include a savings clause for any pre-existing violations; she responded that such a clause was unnecessary because of § 12-505(B).  *Id*.  She represented that the billboard industry was looking only for prospective relief and business certainty.  *Id*. at 11.

**¶62**     When the senators on the committee voted on H.B. 2559, Senator Ken Bennett explained that his aye vote was premised on his understanding that the section would apply only prospectively.  *Id*.  Senator Bennett's concern that the statute apply only prospectively is also evidenced by a letter he received from the Senate rules attorneys confirming "that HB 2559 would apply prospectively and that *a municipality would have two years from the effective date of this bill to cite violations pursuant to this section that were discovered by the municipality before the effective date of this bill*."  Letter from Rules Attorney to Sen. Bennett of 03/15/00 (emphasis

35

added).  Senator Bennett also received a letter from Karl Eller, the Chief Executive Officer of Eller Media Company (the predecessor to Clear Channel Outdoor, Inc.), affirming Eller Media's understanding that the bill could not be applied retroactively to affect *existing* litigation.  Letter from Mr. Eller to Sen. Bennett of 03/16/00.  Mr. Eller confirmed that "Eller Media has no intention to use this legislation retroactively to affect billboard litigation *filed* by the City of Tucson."  *Id*. (emphasis added).

**¶63**     The Senate Fact Sheet for H.B. 2559 also suggests that the members of the Senate may have believed that § 9-462.02(C) would apply prospectively and the City would be permitted to file claims for two years after the section's effective date.  Drafted by the Senate staff and supplied to all senators and the public, the fact sheet states that H.B. 2559 differs from the previous year's bill because it does not contain a retroactivity clause.  *Ariz. State Senate Fact Sheet for H.B. 2559*, 44th Leg., 2d Reg. Sess., 1 (Ariz. 2000).

**¶64**     The trial court and court of appeals concluded that they could not consider the legislative history because § 9-462.02(C) is clear on its face.  Minute Entry, Oct. 18, 2001, C-20003722, R. 61 at 4 (hereafter "Minute Entry"); *City of Tucson v. Clear Channel Outdoor, Inc.*, 206 Ariz. 335, 339, ¶ 11, 78 P.3d 1056, 1060 (App. 2003).  While I agree that the statute is

36

clear in several respects, it is opaque on the subject of retroactivity. Because that is the critical issue before us, I would allow insight into the intent of the legislature on that issue. *See* Stephen Breyer, *On the Uses of Legislative History in Interpreting Statutes*, 65 S. Cal. L. Rev. 845, 847 (1992) (defending use of legislative history in interpreting statutes).

¶**65**     The legislative history surrounding the passage of § 9-462.02(C) differs in quality from that disallowed in the cases cited by the trial court. Cases such as *Golder*, 123 Ariz. at 265, 599 P.2d at 221, and *Barlow v. Jones*, 37 Ariz. 396, 399, 294 P. 1106, 1107 (1930), which disapproved the practice of allowing mere witnesses before legislative committees or single members of the legislature to testify as to the legislature's intent, are distinguishable. I agree that such evidence does not necessarily shed light on the intent of the entire body. But Representative Hart was no mere witness before the legislature. He was the sole sponsor of H.B. 2559. He spoke to the committee to explain the purpose of his bill, noting that the only distinction from the bill rejected the previous year was the absence of a retroactivity clause. Representative Hart's comments were particularly persuasive because the senators had expressed concern about the retroactive applicability of the bill, and he spoke directly on that point to assuage their concerns. He also opined that the City would

have two years from the effective date of the statute to file any other known claims.  Statement of Rep. Hart, *supra* ¶ 59.

¶66    The trial court relied on *Hayes v. Continental Insurance Co.*, 178 Ariz. 264, 270, 872 P.2d 668, 674 (1994), to conclude that the statements of non-legislators were inadmissible to demonstrate legislative intent.  Minute Entry, *supra* ¶ 64, at 3.  The statements at issue in *Hayes*, however, were described by the court as either "cryptic" or non-responsive to the issue before the court.  *Hayes*, 178 Ariz. at 269, 872 P.2d at 673.  In that context, the court cautioned against reliance on non-legislators' statements "unless the circumstances provide sufficient guarantees that the statements reflect legislators' views."  *Id*. at 270, 872 P.2d at 674.

¶67    Unlike the cryptic, non-responsive statements in *Hayes*, the statements offered by the outdoor advertising industry's lobbyist and those by Mr. Eller in his letter to Senator Bennett directly addressed the senators' expressed concerns about the precise matter at issue:  the bill's potential retroactive application.  Their statements were neither cryptic nor off-topic, but rather served to relieve the senators' concerns by assuring that the bill would apply prospectively only.[15]  Furthermore, the questions by Senator

---

[15]    A careful examination of Mr. Eller's letter shows that it should have provided readers little comfort regarding claims not

38

Cunningham and the statement by Senator Bennett in explaining his aye vote demonstrate that the senate committee members were singularly focused on the impact of the bill's language on the potential and pending actions in the City of Tucson, and thus the non-legislators' statements do in fact provide sufficient guarantees that the statements may shed light on those senators' views on the very issue of contention in this case. Thus, the *Hayes* test is satisfied and Mr. Eller's letter and Ms. Briggs' statements should be considered as evidence of the legislative intent regarding the non-retroactivity of H.B. 2559.

¶68    The trial court relied on *Rio Rico Properties, Inc. v. Santa Cruz County*, 172 Ariz. 80, 834 P.2d 166 (1992), to exclude the Senate Fact Sheet. Minute Entry, *supra* ¶ 64, at 3. The situation in *Rio Rico*, however, was far different. *Rio Rico*, 172 Ariz. at 90, 834 P.2d at 176. The court in *Rio Rico* was concerned about comparing the intent of one legislature with that of another "a number of years earlier." *Id*. That is not the case here. The same legislature (the Forty-fourth) considered and rejected H.B. 2671, which contained a retroactivity clause in 1999, and passed virtually the same

_____

filed before the effective date of § 9-462.02(C). Mr. Eller's letter appears to state only that cases filed by the effective date of § 9-462.02(C) would not be affected by the amendment. The letter does not state, as the City implies, that Eller agreed that the City could file claims for two years after § 9-462.02(C) became effective.

bill, without the clause, in 2000.  Thus, unlike the situation in *Rio Rico*, we have before us the same individual legislators, the same lobbyist, and the same proposed language.  The concerns confronted by the court in *Rio Rico* are not present in this case.  The nearness in time makes it appropriate for this court to consider the Senate Fact Sheet, which highlighted the difference between H.B. 2671 and H.B. 2559 and indicated the legislative understanding of the bill's prospective application. *Cf. State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 449, ¶ 19, 88 P.3d 159, 163 (2004) (citing legislative fact sheets); *State v. Thompson*, 204 Ariz. 471, 481, ¶ 39, 65 P.3d 420, 430 (2003) (Ryan, J., concurring in part and dissenting in part) (same).

¶69     In short, the record reflects an unusually clear understanding that the Senate Finance Committee, and perhaps the Senate as a whole, did not intend § 9-462.02(C) to bar the claims at issue here.

¶70     Despite this relatively clear legislative history, the language of § 9-462.02(C) seems unequivocal:  "A municipality must issue a citation and file an action involving an outdoor advertising use or structure or sign code violation within two years after discovering the violation."  When the language of a statute is clear, we are to apply it according to its terms because the language is the "best and most reliable index" of

40

the meaning of the statute. *N. Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 303, ¶ 9, 93 P.3d 501, 503 (2004); *State v. Christian,* 205 Ariz. 64, 66, ¶ 6, 66 P.3d 1241, 1243 (2003). Yet we are also exhorted to discern the legislature's intent, and give effect to it. *See People's Choice TV Corp.*, 202 Ariz. at 403, ¶ 7, 46 P.3d at 414. But what are we to do when the words and the intent are at odds?

¶71     We recently wrestled with this dilemma in *North Valley Emergency Specialists v. Santana,* 208 Ariz. at 303-04, ¶¶ 9-14, 93 P.3d at 503-04. In that case, we were confronted with a provision of the Arizona Arbitration Act that was clear on its face, yet appeared to conflict with the legislature's intent. *Id.* We held that we must interpret the statute according to its plain meaning, unless doing so would lead to "impossible or absurd results." *Id.* at 303, ¶ 9, 93 P.3d at 503 (quoting *Bilke*, 206 Ariz. at 464, ¶ 11, 80 P.3d at 271).

¶72     Similarly, in the case now before us, the clear words of the legislature conflict with the legislative – or at least the senatorial – intent. The statute's terms require that actions to enforce sign code ordinances be filed within two years from the date of discovery. A.R.S. § 9-462.02(C). Applying this provision would bar several of the claims the City filed on July 17, 2001. Yet in 2000, several legislators sought assurances that the amendment would not "reach back" to

41

jeopardize these claims, and assurances were forthcoming from the outdoor advertising industry's lobbyist, the bill's sponsor, and the senate rules attorneys that it would not do so.

¶73    Despite the legislative history, I would enforce the statute according to its terms, for these reasons:  First, as clear as the legislative intent seems to be, it emanates mostly from the Senate, and even then stems largely from the proceedings before one committee.  We have no indication as to the intent of members of the House of Representatives, other than Representative Hart.  Second, respecting the legislature's role as the state's chief policymaker, the court must rely on the truest indicator of the legislature's intent:  the words it chooses to put in the statute.  While the legislative history is less than clear because of its incompleteness, the words are as clear and precise as language can be.  The statute requires that a "municipality must . . . file an action involving . . . [a] sign code violation within two years after discovering the violation," A.R.S. § 9-462.02(C), not within two years of the effective date of the statute.

¶74    Thus, despite the legislative history suggesting that the legislature intended for these claims to go forward, I would affirm the result reached by the trial court and court of appeals – that is, I would enforce the clear terms of the legislation and require dismissal of those claims filed on July

17, 2001, that were discovered more than two years earlier.

¶75     The result is not unfair to the City.  It was aware that H.B. 2559 was under consideration.  It had months to file claims that it had known of for years.  Obviously anticipating the statutory interpretation rendered by the trial court and court of appeals, it managed to file 122 claims the day before § 9-462.02(C) became effective.  That it might lose some of the thirty-four dismissed claims filed nearly a year after the effective date of § 9-462.02(C) is simply the result of the strict application of the statutory terms.

¶76     I have two additional reasons for deciding this case under § B rather than § C.  First, interpreting § C as the majority has done produces one result that is counterintuitive, although probably not impossible or absurd.  *See N. Valley*, 208 Ariz. at 303, ¶ 9, 93 P.3d at 503 (cautioning against statutory interpretations that lead to "impossible or absurd results"). Applying § C in a case such as this, where there was no "time fixed in the pre-existing law," yields the potential of reviving very old claims.  That is, applying § C's one-year grace period gives a municipality one year to salvage claims that were discovered ten or twenty years earlier – or even more – because those old claims would be "barred when the amendment [§ 9-462.02(C)] takes effect," having been discovered more than two years before the effective date of § 9-462.02(C).  A.R.S. § 12-

43

505(C). Section 12-505(C) would then permit the City to file those claims "within one year from the time the new law takes effect."[16] *Id.*

**¶77** If § B is applied – because the statute has not run on such cases and no time period was "fixed in the pre-existing law" – the City would have only a short time to file previously discovered claims or it would lose them. For example, a claim discovered twenty-two months before the effective date of § 9-462.02(C) would have to be filed within two months, or it would be lost. *See* A.R.S. § 12-505(B). I can imagine no policy that is fostered by allowing an additional year to file claims discovered thirty-six or forty-eight months before the effective date of the amendment while allowing only two months to file a claim discovered twenty-two months before the effective date. That anomalous result would not occur if § B were applied when there was no prior limitations period "fixed in the pre-existing law," because the forced application of the amendment, § 9-462.02(C), provides a limitation that would preclude reviving very old claims. Section C could then properly be applied only in situations in which there was an existing limitations period

---

[16] Although we do not know whether such old claims were filed, the possibility demonstrates the inappropriateness of applying § C in the absence of a "time of limitation fixed in the pre-existing law." Proper application of § 12-505(B) in such cases would prevent the filing of such stale claims.

44

"fixed in the pre-existing law."[17]

**¶78**     Applying § B when there is no previous statute of limitations, as § 12-505 requires, also has the salutary effect of giving meaning to the phrase "time of limitation fixed in the pre-existing law," rather than rendering it surplussage.  This result seems sensible and serves the public policy of providing business certainty.  In effect, the legislature has given the City a firm date within which to file claims, while cutting off the outdoor advertising industry's exposure in perpetuity to "dangling" or unresolved claims.

**¶79**     The second and final reason for declining to resort initially to § 12-505(C) to govern this case is that neither party argued that legal theory until directed by this court to do so.  While we must rule correctly on the law, arguments and theories not raised by the parties generally are deemed waived. *See State v. Gortarez*, 141 Ariz. 254, 262, 686 P.2d 1224, 1232 (1984).  It is not our practice to suggest arguments for the parties.

**¶80**     In the end, I concur in the result regarding the bulk of the claims, those filed on July 17, 2000, but dissent

---

[17]     Appropriately applying § 12-505(B) does not, as the majority suggests, deprive § 12-505(C) of meaning. *See* Op. ¶¶ 31, 34.  That section alone applies to those cases in which an amendment shortens the "time of limitations fixed in the pre-existing law" so as to bar an action that would otherwise have existed.

45

regarding the result as to those filed after the effective date of A.R.S. § 9-462.02(C).  As to those claims, I would affirm the opinion of the court of appeals.


                                      _____
                                        Rebecca White Berch, Justice